JANE E. VETTO, OSB #914564
Marion County Legal Counsel
*jvetto@co.marion.or.us*
KEEGAN C. MURPHY, OSB #194264
Assistant Legal Counsel
*kemurphy@co.marion.or.us*
555 Court Street N.E., Suite 5242
P.O. Box 14500
Salem, OR 97309
Telephone: (503) 588-5220
Facsimile No.: (503) 373-4367
Attorney for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ORLANDO JOHNQUIL MCCRAE, | Case No. 6:20-cv-02272-MK |
| *Plaintiff*, | |
| v. | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| MARION COUNTY, by and through the MARION COUNTY SHERIFF'S OFFICE, et al., | |
| *Defendants*. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................iii

L.R. 7-1 CERTIFICATION...............................................................................................1

MOTION ...........................................................................................................................1

MEMORANDUM OF LAW ..............................................................................................2

I.    SUMMARY JUDGMENT STANDARD .................................................................2

II.   EXHAUSTION OF ADMINISTRATIVE REMEDIES ..........................................3

    A.    Legal Background .............................................................................................3
    B.    Jail Grievance Process......................................................................................4
    C.    Plaintiff Failed to Exhaust His Administrative Remedies on Most Claims .....5
        1.    Claim #1 – Deliberate Indifference .......................................................5
        2.    Claim #3 – Excessive Force ..................................................................8
        3.    Claims #2 and 4 – Failure to Train and Supervise ..............................10
        4.    Claim #5 – Access to Courts ...............................................................12
        5.    Claim #6 – Religious Freedom ............................................................13
        6.    Claim #7 – ADA and Rehabilitation Act .............................................14

III.  OREGON TORT CLAIMS ACT ...........................................................................14

    A.    Legal Background ...........................................................................................14
    B.    Plaintiff Failed to Satisfy OTCA Requirements on his State Law Claims ......15

IV.   ANALYSIS OF PLAINTIFF'S CLAIMS ..............................................................16

    A.    Legal Background ...........................................................................................16
    B.    Plaintiff Cannot Show the Violation of a Constitutional Right ......................17
        1.    Claim #1 – Deliberate Indifference .....................................................17
        2.    Claim #3 – Excessive Force ................................................................20
            a.    September 25, 2020 Incident .....................................................20
            b.    October 5, 2020 Incident ..........................................................21
            c.    October 6, 2020 Incident ..........................................................21
            d.    October 29 and 30, 2020 Incidents............................................22
            e.    January 7, 2021 Incident ...........................................................24
            f.    Analysis.....................................................................................25
        3.    Claims #2 and 4 – Failure to Train and Supervise ..............................27
        4.    Claim #5 – Access to Courts ...............................................................28
        5.    Claim #6 – Religious Freedom ............................................................32
        6.    Claim #7 – ADA and Rehabilitation Act .............................................33
        7.    Claims #8-12 – State Constitutional Claims ........................................34

       8.    Claims # 13-14 – State Law Negligence ....................................................34

    C.   Defendants Are Entitled to Qualified Immunity ..................................................35

V.    CONCLUSION ...................................................................................................................36

## TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. al-Kidd*,
    563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) ....................................35

*Bell v. Wolfish*,
    441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979) ................................6 n.1, 26

*Bounds v. Smith*,
    430 U.S. 817, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977) ..........................................29

*Castro v. Cty. of Los Angeles*,
    833 F.3d 1060 (9th Cir. 2016) ................................................................................17

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S. Ct. 2548, 91 L Ed. 2d 265 (1986) ..........................................2

*Cornejo v. County of San Diego*,
    504 F.3d 853 (9th Cir. 2007) .............................................................................15 n.6

*District of Columbia v. Wesby*,
    583 U.S. ___, 138 S. Ct. 577, 199 L. Ed. 2d 453 (2018) .......................................35

*Donovan v. Phillips*,
    685 Fed. Appx. 611 (9th Cir. 2017).......................................................................26

*Farmer v. Brennan*,
    511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) .....................................17

*Felarca v. Birgeneau*,
    891 F.3d 809 (9th Cir. 2018) ..................................................................................28

*Florer v. Peck*,
    No. CV-05-5039-EFS, 2007 U.S. Dist. LEXIS 118971 (E.D. Wash. July 30,
    2007) .......................................................................................................................33

*Fuqua v. Ryan*,
    890 F.3d 838 (9th Cir. 2018) ....................................................................................4

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

*Graham v. Connor,*
   490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)............................................8 n.4, 25

*Hafer v. Melo,*
   502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991)........................................................27

*Hayes v. Idaho Corr. Ctr.,*
   849 F.3d 1204 (9th Cir. 2017) ................................................................................................31

*Ingraham v. Wright,*
   430 U.S. 651, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977)....................................................6 n.1

*Intel Corp. v. Hartford Acc. & Indem. Co.,*
   952 F.2d 1551 (9th Cir. 1991) ..................................................................................................2

*Jamison v. Varano,*
   No. 1:12-CV-1500, 2015 U.S. Dist. LEXIS 103325, 2015 WL 4662696 (M.D.
   Penn. August 6, 2015)..................................................................................................... 30-31

*Jones v. Bock*
   549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007)........................................................3

*Kingsley v. Hendrickson,*
   576 U.S. 389, 135 S. Ct. 2466, 192 L. Ed. 2d 416 (2015) ...............................................25-26

*Lockett v. Cty. of Los Angeles,*
   977 F.3d 737 (9th Cir. 2020) ................................................................................................27

*Lolli v. County of Orange,*
   351 F.3d 410 (9th Cir. 2003) ................................................................................................17

*Marella v. Terhune,*
   568 F.3d 1024 (9th Cir. 2009) ..................................................................................................4

*Marshall v. Ohio Dep't of Rehab. & Corr.,*
   No. 2:14-cv-338, 2017 U.S. Dist. LEXIS 54462 (S. D. Ohio April 10, 2017)......................13

*Martinez v. City of Clovis,*
   943 F.3d 1260 (9th Cir. 2019) ................................................................................................16

*Matsushita Elec. Indus. Co. v. Zenith Radio,*
   475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)....................................................2-3

*McGary v. City of Portland*
   386 F.3d 1259 (9th Cir. 2004) ................................................................................................34

*McKinney v. Carey,*
  311 F.3d 1198 (9th Cir. 2002) ..................................................................4

*Monell v. Dept. of Soc. Services,*
  436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)...........................27

*Morales v. Fry,*
  873 F.3d 817 (9th Cir. 2017). ...............................................................35

*Morton v. Hall*
  599 F.3d 942 (9th Cir. 2010) ..................................................................3

*Mullenix v. Luna,*
  577 U.S. 7, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015)............................35

*Nordstrom v. Ryan,*
  762 F.3d 903 (9th Cir. 2014) ................................................................32

*O'Lone v. Estate of Shabazz,*
  482 U.S. 342, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987)........................33

*Pearson v. Callahan,*
  555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)........................16

*Porter v. Nussle,*
  534 U.S. 516, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002)...........................3

*Reichle v. Howards,*
  566 U.S. 658, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012)......................35

*Reyes v. Smith,*
  810 F.3d 654 (9th Cir. 2016) ..................................................................3

*Rich v. Pereira,*
  No. 18-cv-06266-EMC, 2020 U.S. Dist. LEXIS 109012 (N.D. Cal. June 22,
  2020) ....................................................................................................11

*Rico v. Ducart,*
  980 F.3d 1292 (9th Cir. 2020). ..............................................................36

*Rivera v. County of Los Angeles,*
  745 F.3d 384 (9th Cir. 2014) ................................................................27

*Rodriguez v. Cty. of Los Angeles,*
  891 F.3d 776 (9th Cir. 2018) ................................................................28

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

*Sanchez v. Vild,*
    891 F.2d 240 (9th Cir. 1989) ..................................................................................18

*Saud v. Days,*
    36 F.4th 949 (9th Cir. 2022) ..................................................................................33

*Shakur v. Schriro,*
    514 F.3d 878 (9th Cr. 2008)....................................................................................3

*Silva v. Di Vittorio,*
    658 F.3d 1090 (9th Cir. 2011) ..........................................................................29 n.7

*Springer v. Rekoff,*
    No. 3:14-CV-300, 2016 U.S. Dist. LEXIS 130955 (S.D. Tex. Sept. 26, 2016) .....................11

*Starr v. Baca,*
    652 F.3d 1202 (9th Cir. 2011) ..................................................................................28

*Stevenson v. Koskey*
    877 F.2d 1435 (9th Cir. 1989) ..................................................................................32

*Tortu v. Las Vegas Metro. Police Dep't,*
    556 F.3d 1075 (9th Cir. 2009) ..................................................................................16

*Turner v. Safley,*
    482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987).......................................................30

*Uerling v. Piccinini,*
    No. C 98-3490 CRB (PR), 1999 U.S. Dist. LEXIS 5424 (N.D. Cal. April 12, 1999) ....................................................................................27

*United States v. Wilson,*
    690 F.2d 1267 (9th Cir. 1982) ..................................................................................29

*Wales v. Howell,*
    No. 3:18-0403, 2020 U.S. Dist. LEXIS 96220 (M.D. Tenn. April 29, 2020) ....................27

*Witherow v. Paff,*
    52 F.3d 264 (9th Cir. 1995) ..................................................................................30

*Woodford v. Ngo,*
    548 U.S. 81, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006)......................................................4

**State Cases**

*Hunter v. City of Eugene,*
    309 Or. 298, 787 P.2d 881 (1990) ..................................................................................34

*Orr v. City of Eugene,*
   151 Or. App. 541 (1997) ............................................................................... 14

*Tyree v. Tyree,*
   116 Or. App. 317 (1992) ............................................................................... 14

**Federal Statutes**

28 U.S.C. § 794 ................................................................................................. 1

41 U.S.C. § 12131 ............................................................................................. 1

42 U.S.C. § 1983 ................................................................................... *passim*

42 U.S.C. § 1997e ............................................................................................. 3

**State Statutes**

ORS 30.275 ...................................................................................................... 14

**Federal Rules & Regulations**

Fed. R. Civ. P. 56 ......................................................................................... 1-2

Page | vii – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

**L.R. 7-1 CERTIFICATION**

In compliance with this Rule, Defendants assert that the opposing party is a prisoner not represented by counsel.

**MOTION**

Plaintiff Orlando Johnquil McCrae ("Plaintiff") is suing Defendants Marion County, Sheriff Joe Kast, Commander Tad Larson, Lt. J. Ramsey, Sgt. Jared Miller, Deputy Allen, Deputy Anderson, Deputy Barker, Deputy Barnhill, Deputy Buckholz, Deputy Chrisemer, Sgt. Davis, Deputy Douglass, Deputy Godoy, Deputy Gonzalez, Deputy Howell, Sgt. Jochams, Deputy Lilly, Deputy Maddy, Lt. McDaniel, Deputy McLin, Deputy Riedberger, Deputy Sanne, Deputy Sterling, Deputy Straus, Deputy A. Barton, RN Angelica, Deputy B. Hoppe, Deputy J. Friesen, Sgt. J. Peterson, Deputy J. Susee, Deputy J. Tilson, Deputy Korey Kneeland, Sgt. P. Dodson, Deputy R. Hernandez, Deputy R. Tilson, Sgt. Ryan Dunbar, Deputy S. Griffith, Deputy T. Hart, and Deputy W. Hook ("Defendants"), in their individual and official capacities, for alleged violations of Plaintiff's First, Fourth, Sixth, Eighth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983; the Americans with Disabilities and Rehabilitation Acts pursuant to 41 USC § 12131 and 28 USC §794; Article I, §13 and § 16 of the Oregon Constitution; and for negligence under Oregon state law.  *See* Am. Compl. (ECF No. 14).

Pursuant to Federal Rule of Civil Procedure ("FRCP") 56(a), Defendants move this Court for an order granting summary judgment on all claims in Plaintiff's Amended Complaint because there is no genuine issue of material fact and Defendants are entitled to summary judgment as a matter of law.  This motion is supported by the following Memorandum of Law, the pleadings on file, the Declaration of Sergeant Matt Davis ("Davis Decl."), the Declaration of Justine Flora ("Flora Decl."), and the exhibits attached therein.

## MEMORANDUM OF LAW

Plaintiff was in the custody of the Marion County Jail ("Jail") from September 13, 2020, through January 7, 2021.  Davis Decl., ¶ 5, Ex. A at 1-2 (Housing History).  On or about December 28, 2020, Plaintiff filed this lawsuit against Marion County and over forty jail employees asserting a total of fifteen claims for relief under a variety of state and federal laws. Complaint (ECF No. 2).  At all times relevant to the claims asserted in the action, Plaintiff was lawfully incarcerated in the Jail. Am. Compl. ¶ 5 (ECF No. 14).

As explained in further detail below, all of Plaintiff's claims fail as a function of one or more of (1) failure to exhaust administrative remedies, (2) failure to comply with the notice requirement of the Oregon Tort Claims Act ("OTCA"), (3) insufficient supporting evidence on the merits, and/or (4) qualified immunity.  Given the volume of claims asserted in Plaintiff's complaint and number of legal issues, the material facts and legal arguments pertinent to each of the issues listed above are set out in individual sections that follow.

## I.  SUMMARY JUDGMENT STANDARD

FRCP 56 authorizes Summary Judgment if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). For issues on which the party moving for summary judgment *would not* bear the burden of persuasion at trial, the party is responsible only for "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id* at 323.  The burden then shifts to the nonmoving party to "present significant probative evidence tending to support its claim or defense." *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The nonmoving party fails to meet its burden if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

U.S. 574, 587 (1986)).  For issues on which the moving party *would* bear the burden of

persuasion at trial, the party must demonstrate that "the evidence is so powerful that no

reasonable jury would be free to disbelieve it" to prevail on the motion.  *Shakur v. Schriro*, 514

F.3d 878, 890 (9th Cir. 2008).

## II.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

### A.  Legal Background

In relevant part, the Prison Litigation Reform Act (PLRA) provides that "[n]o action shall

be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law,

by a prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  This requirement "applies to all

inmate suits about prison life" and requires exhaustion of "all available remedies," regardless of

whether the remedy meets federal standards or is "plain, speedy, and effective."  *Porter v.

Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002).  It also applies even if the

type of relief ultimately sought is not available through the administrative process.  *See Morton

v. Hall*, 599 F.3d 942, 945 (9th Cir. 2010) (explaining that an inmate seeking only money

damages must still complete a prison administrative process that could provide some relief, but

no money, in order to exhaust administrative remedies).

In assessing whether a prisoner has properly exhausted available administrative remedies,

"it is the prison's requirements, and not the PLRA, that define the boundaries of proper

exhaustion."  *Jones v. Bock*, 549 U.S. 199, 218, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007).  Thus,

to properly exhaust a claim, a prisoner must pursue "every available step" of a facility's

grievance process, including any appeals offered.  *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir.

2016).  Additionally, "because no adjudicative system can function effectively without imposing

some orderly structure on the course of its proceedings," proper exhaustion requires compliance

with the procedural rules of a facility's grievance process. *Woodford v. Ngo*, 548 U.S. 81, 90-91, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006). This includes compliance with requirements such as deadlines to submit grievances, *Marella v. Terhune*, 568 F.3d 1024, 1028 (9th Cir. 2009), or specifications regarding the level of detail with which a prisoner must describe his or her grievance, *Fuqua v. Ryan*, 890 F.3d 838, 845 (9th Cir. 2018). A prisoner must exhaust all of the administrative remedies available to him or her before bringing suit. *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002). Failure to do so requires dismissal of any unexhausted claims. *Id.* at 1200-1201.

### B.  Jail Grievance Process

In Marion County, the Jail provides a four-step process for Adults in Custody (AICs) to seek resolution for their grievances administratively. Davis Decl., ¶ 8. That process is detailed out in the Marion County Sheriff's Office AIC Handbook, which every AIC is provided a copy of when they are first lodged at the Jail. *Id.*, ¶ 7, Ex. B at 15 (AIC Handbook). If an AIC loses their copy or requires another for any reason, additional copies are available upon request behind the deputy desk in each unit. *Id.*, ¶ 7. Copies of the grievance procedure are also available upon request. *Id.* On the form that AICs are provided and required to use when submitting grievances, AICs are instructed to follow the rules of the grievance procedure located in the AIC Handbook. *Id.*, ¶ 8, Ex. C (Grievances).

The AIC Handbook sets out the step-by-step process by which inmates may file a grievance and, if necessary, appeal it up the chain of command. *Id.*, ¶ 9. Under that process, an AIC must submit a grievance within thirty days of the incident being grieved. *Id.*, Ex. B at 15. The process then proceeds through four different levels of review. *Id.*, ¶ 9, Ex. B at 15. At the first level, an involved employee will review the AIC's grievance and attempt to resolve it if possible and appropriate. *Id.* If the AIC remains dissatisfied following the employee's

attempted resolution, he or she has seven days from the date of receipt of the employee's response to submit an appeal to the second level, where it is reviewed by a supervisor.  *Id.*  If the supervisor is also unable to resolve the AIC's grievance, the AIC can appeal again to a third level by following the same process where the grievance will be reviewed by a Jail administrator (a Lieutenant).  *Id.*  If the first three levels of review fail to resolve the AIC's grievance, then the final step of the grievance procedure is for the AIC to submit a written appeal to the Jail Commander for review.  *Id.*  Regarding this final step, the Inmate Handbook provides in relevant part:

> "If you are not satisfied with the response from the lieutenant, you will have 7 calendar days from the date of receipt to submit a written request for review to the Jail Commander or their designee.  This request must be in writing, and on a separate document from the original grievance.  The written request for appeal must include a copy of the grievance you are requesting an appeal on.  A copy of the grievance and the written request for appeal will be forwarded to the Jail Commander for review."

*Id.*, Ex. B at 15. The grievance process is completed only upon review by the Jail Commander. *Id.*, ¶ 10.

During his time in Jail custody, Plaintiff submitted a total of seventy-five grievances spanning a variety of different topics.  *Id.*, ¶ 11.  As discussed in further detail below, fourteen of those grievances arguably relate to the claims Plaintiff makes in this lawsuit.  Of those fourteen grievances, Plaintiff only pursued five through to review by the Jail Commander.  *Id.*, ¶ 13, Ex. C (Grievances).

### C.  Plaintiff Failed to Exhaust his Administrative Remedies on Most Claims

#### 1.  Claim #1 – Deliberate Indifference

In his first claim for relief, Plaintiff asserts several claims against all defendants under 42 U.S.C. § 1983 for violation of his Fourteenth Amendment right as a pre-trial detainee not to be

Page | 5 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

punished when he has not been convicted of a crime.[1]  Am. Compl. ¶ 185 (ECF No. 14).

Plaintiff alleges that Jail staff violated this right in three ways: (1) failing to provide him

adequate and timely care for various psychiatric conditions; (2) failing to promptly

decontaminate him after he had been pepper sprayed or covered himself in fecal matter; and (3)

denying him several basic necessities, including clothing, bedding, soap, towels, and other

unspecified hygiene items.  *Id.*

Beginning with Plaintiff's first claim of inadequate mental health care, Am. Compl. ¶

185(b) (ECF No. 14), Plaintiff submitted Grievance No. 2389, claiming generally that he had not

received any proper mental health treatment for a variety of conditions since being incarcerated.

Davis Decl. ¶ 26, Ex. C at 31.  Plaintiff pursued this grievance only up through the second level

of review and the grievance form indicates that Plaintiff affirmatively accepted Jail staff's

resolution.  *Id.*, ¶ 26, Ex. C at 31-32.  Accordingly, Plaintiff failed to exhaust his administrative

remedies with respect to the allegation of inadequate mental health care.

Turning to decontamination-related claims, Plaintiff alleges in his complaint that Jail staff

denied him a towel, shower, or soap to decontaminate himself for several days following an

incident on October 6, 2020, during which he was pepper sprayed.[2]  Am. Compl. ¶¶ 102, 126,

---

[1]    Several of Plaintiff's claims, including Claim #1, allege that he was subjected to cruel
and unusual punishment in violation of the Eighth Amendment in addition to other constitutional
violations.  However, the Eighth Amendment's guarantees are concerned only with individuals
who have been convicted of crimes.  *Ingraham v. Wright*, 430 U.S. 651, 671 n.40, 97 S. Ct.
1401, 51 L. Ed. 2d 711 (1977).  For pre-trial detainees, the pertinent constitutional guarantee is
the prohibition on any form of punishment prior to conviction for a crime under the Due Process
Clause of the Fourteenth Amendment.  *Bell v. Wolfish*, 441 U.S. 520, 535 n.16, 99 S. Ct. 1861,
60 L. Ed. 2d 447 (1979).  Accordingly, where applicable, Plaintiff's Eighth Amendment claims
are analyzed as Fourteenth Amendment claims for purposes of this motion.

[2]    Although Plaintiff's grievance claims that this incident occurred on October 5, 2020, that
appears to be a mistake.  Jail records indicate that the incident occurred on October 6, 2020.
Davis Decl., ¶ 30, Ex. F at 20-30 (Use of Force Reports).   For sake of clarity, the date is
corrected throughout this motion when discussing this incident.

185(h), 193 (ECF No. 14).  Initially following the incident, Plaintiff submitted Grievance No. 961 on October 11, 2020, claiming that he had been denied proper decontamination for four days.  Davis Decl. ¶ 19, Ex. C at 13.  Jail staff responded that Plaintiff had promptly been given the opportunity to decontaminate and Plaintiff never sought review beyond the third level of the grievance process.  *Id.*, ¶ 19, Ex. C at 13-14.  Then, approximately a month and a half later on November 24, 2020, Plaintiff submitted Grievance No. 2189 again claiming that he had been denied proper decontamination following the October 6, 2020, incident.  *Id.*, ¶ 23, Ex. C at 23. Because Plaintiff's handwriting was difficult to read, the initial deputy and supervisor understood his grievance to concern an incident that supposedly occurred on October 25, 2020, and responded that Plaintiff had not been pepper sprayed that day.  *Id.*  However, after Plaintiff clarified in his appeal request that he was actually grieving the incident from October 6, 2020, the administrator and Jail commander both informed Plaintiff that his grievance was outside the thirty-day window for filing a grievance under Jail rules.  *Id.* ¶ 23, Ex. C at 23, 25.[3]

Finally, regarding Plaintiff's final contention that he was denied a variety of basic necessities at unspecified times, including soap, clothing, bedding, towels, and hygiene products, Am. Compl. ¶¶ 185(i), 194 (ECF No. 14), Plaintiff submitted only a single grievance that is arguably pertinent.  Davis Decl., ¶ 25.  On November 26, 2020, Plaintiff submitted Grievance No. 2200 complaining that on September 25, 2020, he was "stripped naked and left in an empty, unbearably cold cell with no shelter and no bedding."  *Id.*, ¶ 25, Ex. C at 30.  At the first level, a

---

[3]        Notably, Plaintiff also raises a second decontamination-related claim for which he did fully exhaust his available administrative remedies.  Plaintiff alleges in his complaint that he was denied a shower for three days after he covered himself and his cell in fecal matter on October 22, 2020.  Am. Compl. ¶¶ 75-76, 85, 87, 114, 185(h), 193 (ECF No. 14).  Regarding this incident, Plaintiff filed Grievance No. 918, to which Jail staff responded that Plaintiff was offered repeated showers to decontaminate.  Davis Decl. ¶ 16, Ex. C at 5.  Plaintiff ultimately pursued this grievance through all four levels of appeal.  *Id.* ¶ 19, Ex. C at 5-8.

deputy responded that his grievance was void because the incident being complained of was outside the thirty-day window for grievances under Jail rules.  *Id.*, ¶ 25, Ex. B at 15 (AIC Handbook), Ex. C at 30.  Plaintiff did not seek further review of the grievance.  *Id.*, ¶ 25. Accordingly, Plaintiff failed to exhaust his available administrative remedies with respect to any additional denial of basic necessities claims.

### 2. Claim #3 – Excessive Force

In his third claim for relief, Plaintiff asserts 42 U.S.C. § 1983 claims against all Defendants for violation of his Fourteenth Amendment right not to be punished as a pre-trial detainee.[4]  Am. Compl. ¶¶ 188-196 (ECF No. 14).  Plaintiff alleges that the force used against him was excessive on five different occasions throughout his incarceration, particularly in light of his various psychiatric conditions: September 25, 2020, October 5, 2020, October 6, 2020, October 29 and 30, 2020, and January 7, 2021.  However, in each of these instances, Plaintiff either did not timely file a grievance or did not ultimately pursue a grievance through the full appeals process.

Beginning with September 25, 2020, Plaintiff alleges that Defendants used excessive force when they held him to the floor in order to control him as he resisted attempts to extract him from his cell.  Am. Compl. ¶ 58 (ECF No. 14).  Despite performing a diligent search, Defendants are unable to find any record of a grievance having been filed regarding this incident,

---

[4]    In his complaint, Plaintiff also alleges violations of his Fourth and Eighth Amendment rights.  As explained in footnote 1, *supra*, because Plaintiff was a pretrial detainee at the time, the Eighth Amendment does not apply to him.  Similarly, neither the U.S. Supreme Court nor the Ninth Circuit has recognized Fourth Amendment protections against excessive force past an individual's initial arrest.  *See Graham v. Connor*, 490 U.S. 386, 395 n.10, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) ("Our cases have not resolved the question whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins. . . It is clear, however, that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.").  As before, the pertinent constitutional right is the Fourteenth Amendment.

Davis Decl., ¶ 28, and, unlike most other incidents, Plaintiff does not allege in his complaint that he filed one.  Accordingly, Plaintiff failed to exhaust his administrative remedies with respect to this incident.

On October 5, 2020, Plaintiff alleges in his complaint that Defendants used excessive force against him by punching him through the food port and threatening to pepper spray him. Am. Compl. ¶¶ 63-65 (ECF No. 14).  Following that incident, Plaintiff submitted Grievance No. 964, though his grievance was somewhat confusingly written.  In addition to citing the wrong day, October 4, 2020, at first blush Plaintiff's grievance appears to be grieving a disciplinary sanction that he received.  Davis Decl., ¶ 20, Ex. C at 15.  Plaintiff complains that Deputy Randy Barnhill, Jr. "took action towards punishing me according to what his junior staff had told him immediately, without first inquiring about the situation to make sure his next action was fair and not unjust."  *Id.*  However, Plaintiff then goes on to describe an incident that happened on October 5, 2020.  *See id.*, ¶ 30, Ex. F at 18-19.  Evidently believing that Plaintiff was attempting to grieve a disciplinary sanction, Barnhill voided the grievance because Jail rules prohibit grieving disciplinary issues; appeals from disciplinary sanctions are handled via a different process. *Id.*, ¶ 20, Ex. C at 15, Ex. D (AIC Grievance Policy).  Plaintiff never attempted to clarify, file a new grievance, or otherwise contest Barnhill's voiding of Grievance No. 964.  *Id.*, ¶ 20.  Thus, Plaintiff failed to exhaust his administrative remedies with respect to this incident.

On October 6, 2020, Plaintiff alleges in his complaint that Defendants used excessive force by pepper spraying him during the course of a cell extraction.  Am. Compl. ¶¶ 63-65 (ECF No. 14).  Although Plaintiff submitted Grievance Nos. 961 and 2189 about the failure to decontaminate him following this incident, he never submitted a grievance regarding the use of force.  Davis Decl., ¶ 28.  Accordingly, Plaintiff failed to exhaust administrative remedies for this incident.

Plaintiff next alleges that Jail staff used excessive force during two cell extractions—one late in the evening on October 29, 2020, and another just after midnight in the early morning hours of October 30, 2020—and afterwards when he was strapped into a restraint chair for a period of several hours.  Am. Compl. ¶¶ 54, 77-78, 82, 88, 91, 99, 119, 121 (ECF No. 14). Regarding these incidents, Plaintiff filed Grievance Nos. 927 (concerning the restraint chair on October 30th) and 928 (concerning the use of force on October 29th).  Davis Decl., ¶¶ 17-18, Ex. C at 9, 11.  Plaintiff did not submit a grievance regarding the use of force during the cell extraction on October 30th.  *Id.*, ¶ 28.  Ultimately, Plaintiff did not pursue either grievance through to review at the fourth level and indeed, in the case of Grievance No. 928, Plaintiff admitted in his appeal form that he had lied about many of the details in his grievance "to get back at those who hurt me."  *Id.*, ¶¶ 17-18, Ex. C at 9-12.  Plaintiff thus failed to exhaust administrative remedies regarding these incidents.

Finally, Plaintiff also alleges that deputies used excessive force in the course of extracting him from his cell on January 7, 2021.  Am. Compl. ¶¶ 164-171 (ECF No. 14).  That day, Jail deputies extracted Plaintiff from his cell pursuant to an order by Marion County Circuit Court Judge David Leith after Plaintiff refused to be brought to the sentencing hearing in his criminal case.  Davis Decl., ¶ 30, Ex. F at 70 (Use of Force Reports).  Following that hearing, Plaintiff was transferred to the custody of the Oregon Department of Corrections.  *Id.*, ¶ 30, Ex. F at 71. At no point did Plaintiff ever file a grievance concerning the incident.  *Id.*, ¶ 28.

### 3.   Claims #2 and 4 – Failure to Train and Supervise

In Claims #2 and 4, Plaintiff asserts that Marion County, Sheriff Joe Kast, Jail Commander Tad Larson, and Lieutenant Jacob Ramsey violated the Fourteenth Amendment and 42 U.S.C. § 1983 by failing to adequately train and supervise Jail staff to ensure the delivery of mental health care services (Claim #2) and that use of force in the Jail was appropriate (Claim

#4).  Am. Compl. ¶ 187, 198 (ECF No. 14).  During his incarceration, Plaintiff did not file any grievances directly addressing the adequacy of Jail staff supervision or training.  Davis Decl., ¶ 28.

In similar situations, rather than requiring that a grievance be filed specifically regarding inadequate training or supervision, other courts have looked to whether the plaintiff filed grievances concerning the underlying conduct alleged to have occurred *as a result of* the inadequate training or supervision.  *See Rich v. Pereira*, No. 18-cv-06266-EMC, 2020 U.S. Dist. LEXIS 109012 at *22 (N.D. Cal. June 22, 2020) ("[A]n inmate will typically exhaust his administrative remedies on a *Monell* claim simply by exhausting his remedies on his claims regarding the officially sanctioned conduct." (Quoting *Springer v. Rekoff*, No. 3:14-CV-300, 2016 U.S. Dist. LEXIS 130955 at *18-19 (S.D. Tex. Sept. 26, 2016))).  The theory is that if a plaintiff submits a grievance regarding the underlying conduct, that will be sufficient to put a government entity on notice of an alleged failure in training, supervision, or unconstitutional policy.  *Id.*  Thus, exhaustion of Plaintiff's Claims #2 and 4 is dependent on the extent to which he exhausted his substantive claims regarding mental health care services under Claim #1 and use of force under Claim #3.

As previously explained, Plaintiff failed to exhaust his administrative remedies with respect to the portion of Claim #1 alleging inadequate mental health care services in the Jail and with respect to any of the incidents in Claim #3.  Accordingly, he did not adequately put the Jail on notice of any failure in training and supervision and failed to exhaust his administrative remedies with respect to Claims #2 and 4.

### 4.  Claim #5 – Access to Courts

Plaintiff asserts 42 U.S.C. § 1983 claims against all Defendants for violation of the First, Sixth, and Fourteenth Amendments in four different ways: (1) denial of access to legal materials

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

to assist his attorneys in his criminal trial; (2) denial of access to legal mail in a timely manner;

(3) opening legal mail outside of his presence; and (4) requiring him to conduct attorney calls

and visits in his cell where there is a two-way intercom through which Jail staff and other

inmates could listen in on his visits.  Am. Compl. ¶ 200 (ECF No. 14).  With respect to all four

of these claims, Plaintiff submitted and pursued one grievance through the complete grievance

process.  Those grievances are set out here for the sake of clarifying at what specific times and

regarding what specific conditions Plaintiff exhausted his administrative remedies.

Regarding access to legal materials, on October 28, 2020, Plaintiff fully exhausted his

administrative remedies with respect to Grievance No. 914, which complained in general terms

about being "access to courts, personal or legal studies" during his three-day review by a Jail

sergeant.  Davis Decl., ¶ 15, Ex. C at 3.  Regarding access to legal mail, Plaintiff fully exhausted

his administrative remedies with respect to Grievance No. 2006, which he submitted on

November 1, 2020, complaining that he was not currently being allowed access to legal mail.

*Id.*, ¶ 21, Ex. C at 18.[5]  Finally, regarding his legal mail being read and conversations with his

attorney being monitored, Plaintiff pursued Grievance No. 2193 through the full Jail grievance

process, which claimed in generalized terms that staff were opening his legal mail and listening

in on his conversations with his attorney via an intercom device in his cell.  *Id.*, ¶ 24, Ex. C at 26.

However, because Grievance No. 2193 contains only generalized allegations and does not allege

any specific dates on which either claimed violation occurred, Plaintiff's grievance failed to give

Defendants "fair notice" of his claims as required by the PLRA.  *Cf. Marshall v. Ohio Dep't of*

*Rehab. & Corr.*, No. 2:14-cv-338, 2017 U.S. Dist. LEXIS 54462 at *26 (S. D. Ohio April 10,

---

[5]    Notably, however, Plaintiff did not exhaust his administrative remedies with respect to Grievance No. 910, which complained about a three-day delay from October 21 through October 24, 2020, in receiving one item of legal mail.  Davis Decl., ¶ 14, Ex. C at 1.  Plaintiff did not pursue this grievance past the third level of review.  *Id.*

2017) (holding that generalized complaint of dissatisfaction with medical care without naming any specific instances where care was claimed to be inadequate was insufficient to give fair notice of the plaintiff's claim). Accordingly, Plaintiff failed to exhaust administrative remedies with respect to the last two parts of Claim #5.

### 5.  Claim #6 – Freedom of Religion

Plaintiff asserts 42 U.S.C. § 1983 claims against all Defendants for violation of the First and Fourteenth Amendment rights, alleging that Defendants denied him access to a Bible "for substantial periods of time while in Defendants' custody." Am. Compl. ¶ 202 (ECF No. 14). Plaintiff filed three grievances arguably pertinent to this claim. Davis Decl., ¶¶ 15, 22, 27, Ex. C at 3, 22, 33. On November 9, 2020, and December 19, 2020, respectively, Plaintiff submitted Grievance Nos. 2010 and 2391, both times specifically complaining that he had been denied access to a Bible. *Id.*, ¶ 22, 27, Ex. C at 22, 33. In the case of Grievance No. 2010, Jail staff voided the grievance because Plaintiff checked two boxes under the "Reasons for Grievance" section of the form despite the instruction on the form that an AIC should "Check One" box. *Id.*, ¶ 22, Ex. C at 22. In the case of Grievance No. 2391, a deputy responded that Plaintiff was denied the Bible because two days prior he had used paper in his cell to block his window again. *Id.*, ¶ 27, Ex. C at 33. The form indicates that Plaintiff accepted the resolution and Plaintiff did not appeal further. *Id.*

In addition to these two grievances, Plaintiff referred to being denied "my right to my religious studies" in Grievance No. 914 submitted November 1, 2020, which he pursued through all levels of the grievance process. *Id.*, ¶ 15, Ex. C at 3-4. However, the grievance does not specifically identify what materials Plaintiff was claiming that he had been denied access to. *Id.*, Ex. C at 3. As previously discussed, this sort of generalized complaint is not sufficient to give Defendants the fair notice of the basis for Plaintiff's claim required by the PLRA and allow them

the ability to address the issue without litigation.  Thus, Plaintiff has failed to exhaust

administrative remedies with respect to this claim.

### 6.   Claim #7 – ADA and Rehabilitation Act

Plaintiff's final federal claim alleges violations of the Americans with Disabilities Act

and Rehabilitation Act against all Defendants for delaying and denying him adequate mental

health care services during the entirety of his incarceration.  Am. Compl. ¶ 204 (ECF No. 14).

Plaintiff submitted no arguably pertinent grievances for this claim about any form of

discrimination, Davis Decl., ¶ 28, and thus has failed to exhaust his administrative remedies.

## III.  OREGON TORT CLAIMS ACT

### A.  Legal Background

For claims under Oregon state law, the Oregon Tort Claims Act (OTCA) provides in

relevant part that "[n]o action arising from any act or omission of a public body or an officer,

employee or agent of a public body . . . shall be maintained unless notice of claim is given." ORS

30.275(1).  Except in the case of wrongful death claims, the required notice must be given within

180 days of the alleged loss or injury.  ORS 30.275(2). Timely notice "'is a substantive condition

precedent to recovery under the Oregon Tort Claims Act that, if not satisfied, deprives a plaintiff

of the right to make a claim.'" *Orr v. City of Eugene*, 151 Or. App. 541, 543 (1997) (quoting

*Tyree v. Tyree*, 116 Or. App. 317, 320, (1992), *rev. den.*, 315 Or. 644 (1993)).  The plaintiff "has

the burden of proving that notice of claim was given as required by [ORS 30.275]."  ORS

30.275(7).

The OTCA provides that notice of a claim against a public body may be satisfied by

formal notice, actual notice, commencement of an action on the claim by the plaintiff, or

payment of all or any part of the claim.  ORS 30.275(3).  Formal notice of a claim is written

communication from a claimant or representative of a claimant containing, among other things, a

statement that a claim for damages is or will be asserted against the public body or an officer,

employee or agent of the public body. ORS 30.275(4)(a).  Formal notice of a claim against a

local public body or an officer shall be given by mail or personal delivery to (1) the public body

at its principal administrative office, (2) to any member of the governing body of the public

body, or (3) to an attorney designated by the governing body as its general counsel.  ORS

30.275(5)(b).  Actual notice of a claim is any communication,

> "by which any individual to whom notice may be given as provided in subsection (5) of this section or any person responsible for administering tort claims on behalf of the public body acquires actual knowledge of the time, place and circumstances giving rise to the claim, where the communication is such that a reasonable person would conclude that a particular person intends to assert a claim against the public body or an officer, employee or agent of the public body."

ORS 30.275(6).

### B.  Plaintiff Failed to Satisfy OTCA Requirements on his State Law Claims

Following the federal claims previously discussed, Plaintiff asserts an additional seven

claims for relief.  Claims #8-12 allege various violations of the Oregon Constitution and Claims

#13-14 allege negligence under Oregon state law.[6]  All of these claims are subject to dismissal

under the OTCA.

Defendants did not receive formal notice of Plaintiff's claims within 180 days of the

events described in Claims #8-14 and Plaintiff will be unable to produce any evidence that any

the of the individuals named in section (5) or person responsible for administering tort claims on

behalf of Marion County—the Risk Manager—was ever made aware of his claims, let alone paid

out any part of them.  Flora Decl. ¶ 3-9.  Finally, although Plaintiff commenced this action

---

[6]     Defendants understand Plaintiff's state constitutional Claims #8-12 to be subject to the OTCA because he is attempting to assert them independently under state law rather than under 42 U.S.C. § 1983.  If Defendants misunderstand and Plaintiff intended to assert these claims under § 1983, then they are not subject to the OTCA, but still fail because violations of state law are not cognizable under § 1983.  *Cornejo v. County of San Diego*, 504 F.3d 853, 855 n.3 (2007).

within 180 days of when his allegations occurred, none of the claims asserted in his original complaint are the same as the ones asserted in his amended complaint, which was not filed until long after 180 days had passed on August 19, 2021.  Am. Compl. (ECF No. 14).  Accordingly, Claims #8-14 are all subject to dismissal.

## IV.  ANALYSIS OF PLAINTIFF'S CLAIMS

Even if Plaintiff had complied with the requirements of the PLRA and OTCA for every claim he asserts, his claims should still be dismissed because no triable issues of fact exist with respect to any.  As explained in further detail below, each of Plaintiff's claims fails as a result of some combination of (1) lack of supporting evidence; (2) qualified immunity; or (3) not being a valid cause of action in the first place.

### A.  Legal Background

When assessing the merits of a motion for summary judgment in a claim under 42 U.S.C. § 1983, courts engage in a two-part inquiry.  *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).  First, "the court must decide whether the facts that a Plaintiff has . . . shown make out a violation of a constitutional right."  *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009) (internal quotation marks and citation omitted).  Second, the doctrine of qualified immunity requires the court to decide whether the right was "clearly established" at the time of the incident.  *Martinez v. City of Clovis*, 943 F.3d 1260, 1270 (9th Cir. 2019).

### B.  Plaintiff Cannot Show the Violation of a Constitutional Right

#### 1.  Claim #1 – Deliberate Indifference

The basic framework for a Fourteenth Amendment § 1983 claim brought by a pretrial detainee regarding Jail conditions parallels that of the Eighth Amendment.  *Lolli v. County of Orange*, 351 F.3d 410, 419 (9th Cir. 2003).  Plaintiffs are required to establish two elements: (1)

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

that prison official deprived the plaintiff of something "sufficiently serious" that it amounts to "[a] denial of the minimal civilized measure of life's necessities," and (2) that prison officials did so with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  Under the Fourteenth Amendment, that state of mind is objective—that "[t]he defendant did not take reasonable available measures to abate [a] risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016).

Measured against this standard, Plaintiff's first claim that Jail staff failed to provide him adequate medical treatment falls short.  Plaintiff's medical file reflects that he received substantial care for his mental health conditions while at the Jail.

During Plaintiff's incarceration, he submitted sixteen medical request forms that could arguably be characterized as complaints about mental health treatment.  Davis Dec. ¶ 31.  Every single one was answered the same day by Jail nursing staff.  *Id.*, ¶ 31, Ex. G at 1-16 (Medical Records).  Plaintiff was prescribed several types of psychiatric medication, including Vistaril for anxiety and both Lamotrigine and Seroquel for psychosis.  *Id.*, ¶ 31, Ex. G at 22, 25 (Physician's Chart Notes), 47-60 (Medication Administration Logs).  One of Plaintiff's subsequent request forms acknowledges that the medication "worked very well."  *Id.*, ¶ 31, Ex. G at 4.  Each of the many times that Plaintiff threatened to commit suicide while he was in the Jail, his medical records reflect that he was immediately seen by a Qualified Mental Health Professional.  *Id.*, ¶ 31, Ex. G at 70-76.  During several sessions, Plaintiff admitted that he was using threats of suicide to manipulate the Jail housing system to inconvenience Jail staff and that he had no intention of harming himself.  *Id.*, ¶ 31, Ex. G at 70.  To the extent that Plaintiff may disagree with the course of any treatment that he received, a mere difference of medical opinion is

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

insufficient to establish a constitutional violation. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Instead, Plaintiff would have to prove that his care was objectively deficient to the point that any reasonable jail official would have appreciated the high degree of risk involved. Plaintiff is unable to produce evidence sufficient to meet that standard.

Plaintiff's allegations regarding decontamination fail for similar reasons, as Plaintiff will be unable to substantiate his claim that he was not provided decontamination. On October 6, 2020, Plaintiff was pepper sprayed during the course of a cell extraction after Plaintiff refused to submit to restraints to allow Jail staff to clean his cell. Davis Decl., ¶ 31, Ex. F at 20-30 (Use of Force Reports). Following the incident, the involved deputies all indicated in their use of force reports that they used a wet towel to wipe Plaintiff's face down to remove any traces of pepper spray and that Plaintiff was left with wet towels and running water in his sink to further decontaminate if necessary. *Id.*, ¶ 30, Ex. F at 21 (Barton), 23 (Gonzalez), 25-26 (Griffith), 28 (Hoppe), 29 (McDaniel). Medical notes from the Jail nurse who examined Plaintiff immediately following the incident similarly indicate that Plaintiff was offered water to decontaminate but that Plaintiff was too aggressive. *Id.*, ¶ 31, Ex. G at 45. Instead, Jail staff left water on in Plaintiff's cell, which he used to decontaminate, and an hour later the nurse noted that he had no additional complaints. *Id.* Further, Plaintiff's segregation activity logs indicate that he was offered a shower the very next day October 7, 2020, which he refused, and another shower on October 10, 2020, which he accepted. *Id.*, ¶ 31, Ex. G at 79. Nursing logs indicate that Plaintiff was seen on October 8, 2020, and contain no mention of Plaintiff being in discomfort from lack of decontamination. *Id.*, ¶ 31, Ex. G at 45.

Records tell a similar story regarding Plaintiff's October 22, 2020, complaint that he was refused a shower for three days after covering himself and his cell in fecal matter. Plaintiff's allegations are belied by Jail segregation logs, in which three different deputies indicated that he

was offered opportunities to shower on October 22, which he refused, and on October 24 and

October 25, which he accepted.  *Id.*, ¶ 31, Ex. G at 81.  The logs further indicate that Plaintiff's

cell was cleaned and he was provided new linens on October 23 and that his cell was cleaned

again on October 24.  *Id.*  During the alleged three-day deprivation, Plaintiff did not submit any

kyte requests for a shower or any other grievances regarding his condition.  *Id.*, ¶ 32.  Until

Plaintiff filed Grievance No. 918 on October 29, 2020, there is no indication that Plaintiff ever

alerted staff to any unhygienic conditions in his cell.  *Id.*  Accordingly, Plaintiff will be unable to

substantiate any of his decontamination allegations.

Finally, Plaintiff's allegation that he was denied basic necessities including soap, towels,

clothing, bedding, and other unspecified hygiene items also fails.  Plaintiff's complaint is not

specific regarding any particular instances when he was denied the items that he claims, and

Plaintiff will be unable to produce evidence sufficient to create a triable issue of fact on the

point.  Although Plaintiff's Jail clothing was taken at various times during his incarceration

because it was contaminated, being used to block a window, or Plaintiff was making threats of

suicide such that access to clothing presented a safety risk, Plaintiff was always issued a smock

to wear.  *See id.*, ¶ 30, Ex. F at 21 (discussing issuance of smock).  Similarly, Plaintiff's

segregation logs are replete with entries about how Plaintiff was provided soap, clothing, linens,

and other hygiene items.  *Id.*, ¶ 31, Ex. G at 79-86.  Simply put, the reason that Plaintiff's

complaint is non-specific regarding this point is that there is no instance on which the alleged

deprivation occurred, and Plaintiff will be unable to produce substantial evidence otherwise.

Accordingly, Defendants are entitled to summary judgment on Claim #1.

### 2.  Claim #3 – Excessive Force

In Claim #3, Plaintiff alleges under 42 U.S.C. § 1983 that all Defendants violated the

Fourteenth Amendment by using excessive force against him on five occasions during his

incarceration, the facts of which are set out below.  At all pertinent times, Plaintiff was on disciplinary segregation following consistent threatening and erratic behavior.  *Id.*

### a.  September 25, 2020 Incident

On September 25, 2020, Jail staff had to extract Plaintiff from his cell, so that it could be cleaned after Plaintiff covered the cell window with fecal matter.  *Id.*, ¶ 30, Ex. F at 1-12. Plaintiff initially submitted to restraints, but once outside he began making threats and attempting to pull away from Deputies Hart and Riedberger, who were holding his arms.  *Id.* Hart warned Plaintiff that he would be placed on the ground if he continued to resist, to which Plaintiff responded that he'd put himself on the floor and dropped to his stomach.  *Id.*  To maintain control of Plaintiff, Hart followed Plaintiff down to the ground and placed a hand on his back between his shoulder blades.  *Id.*  Deputies Friesen and Riedberger then followed up and took hold of Plaintiff's legs to prevent him from kicking.  *Id.*  Plaintiff continued to struggle for several minutes and complained that his handcuffs were too tight, but Deputy Chrisemer checked the cuffs and determined that the fit was appropriate.  *Id.*, ¶ 30, Ex. F at 4, 10.  Once the cell was clean, Plaintiff was assisted to his feet and placed back inside.  *Id.*, ¶ 30, Ex. F at 1-12.  When Plaintiff indicated that he needed medical attention thereafter, Nurse Anthony completed a medical screening and provided Plaintiff with band-aids, antibiotic ointment, and medication. *Id.*, ¶ 30, Ex. F at 12.

### b.  October 5, 2020 Incident

On October 5, 2020, Plaintiff began yelling from his cell and threatening to break a sprinkler head.  *Id.*, ¶ 30, Ex. F at 18.  Deputies Bronson Hoppe and Randy Barnhill, Jr. responded to Plaintiff's cell and Barnhill attempted to talk to him, but Plaintiff threatened to charge him and break his jaw if he opened the door.  *Id.*  Plaintiff jumped up on the toilet in his cell with a sandal in his hand and began hitting the sprinkler.  *Id.*  Hoppe opened the food port

and warned Plaintiff that he would be pepper sprayed if he did not stop. *Id.* Plaintiff jumped down from the toilet and shoved several blankets into the food port, which Hoppe and Barnhill removed. *Id.* Plaintiff then attempted to block the food port with his buttocks. *Id.* With no means of delivering pepper spray into the cell with the food port blocked, Hoppe used two focused blows with a closed fist to get Plaintiff to clear the port. *Id.* Plaintiff then placed his mattress over the food port to block it while Barnhill ordered him several times to submit to restraints. *Id.* Seeking other options, Hoppe opened the pipe chase along the side of Plaintiff's cell in an effort to administer the pepper spray through the vent. *Id.* Barnhill again ordered Plaintiff to submit to restraints and, when Plaintiff noticed that Hoppe was going to use the vent to administer the spray, he submitted to restraint. *Id.* Plaintiff was then removed from his cell without further issue. *Id.* Plaintiff did not appear to be injured and did not complain of any injuries following the incident. *Id.*

### c.  October 6, 2020 Incident

On October 6, 2020, Plaintiff blocked his cell window with toilet paper and his own feces. Because being unable to see into an inmate's cell creates a safety hazard, Deputy Alex Barton asked Plaintiff to submit to restraints so that the window could be cleaned and the cell cleared of further objects that could be used to block the window. *Id.*, ¶ 30, Ex. F at 20. Barton knew from earlier in his shift that Plaintiff had destroyed his mattress and had begun wearing some of the contents, creating what Plaintiff referred to as a "suit of armor." *Id.* Barton informed Sergeant Johnny Peterson, Jr. and a cell extraction team was assembled to remove Plaintiff from the cell. *Id.* The team consisted of Barton as well as Deputies Shane Griffith, Brittany McDaniel, Bronson Hoppe, and Eric Gonzalez. *Id.*

Upon arriving at Plaintiff's cell, Barton gave Plaintiff several orders to clear the windows, but Plaintiff did not comply. *Id.*, ¶ 30, Ex. F at 20-30. Peterson warned Plaintiff that

Page | 21 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

failure to comply would result in force being used against him, including a Taser or pepper spray.  *Id.*  When Plaintiff still refused to submit, Barton opened the food port Plaintiff rushed forward to try and block it.  *Id.*  However, McDaniel was able to get a short burst of spray into the cell before it was blocked.  *Id.*  Shortly thereafter, Hoppe realized that there was a small gap around the edge of Plaintiff's cell door that was not blocked and McDaniel was able to deploy a long burst into the cell.  *Id.*  A few seconds following the spray, Barton gave another order for Plaintiff to remove the mattress and submit to restraints, which Plaintiff complied with.  *Id.*

As the deputies entered the cell and ordered Plaintiff to kneel on the bed so that they could remove his contaminated clothing and prevent him from using it to further block the window.  *Id.*  Plaintiff told them that they would not be taking his clothes and began resisting by pushing against them.  *Id.*  Barton took Plaintiff's right arm and head and pulled him down onto his stomach on the bunk.  *Id.*  Griffith held Plaintiff's arms and back and Hoppe secured his legs. The deputies cut Plaintiff's clothing off and used a wet towel on Plaintiff's eyes and nose to alleviate the effects of the pepper spray.  *Id.*  All the while, Plaintiff made repeated threats to kill the deputies when he got out of jail.  *Id.*  Nurse Nancy Mercer checked Plaintiff for injuries while he was secured and she indicated that she did not believe he was in any distress.  *Id.*

### d.  October 29 and October 30, 2020 Incidents

On October 29, 2020, late into the evening, Deputy Jerry Friesen noticed that Plaintiff's cell window was covered with what appeared to be toothpaste.  *Id.*, ¶ 30, Ex. F at 34-37.  Friesen asked Plaintiff to remove the toothpaste, but Plaintiff refused.  *Id.*  Friesen informed Sergeant Peterson of the situation, who assembled a cell extraction team consisting of himself, Friesen, and Deputies Justin Sanne, and Eric Gonzalez.  *Id.*  Peterson ordered Plaintiff to remove the toothpaste from the window and warned him that, if he did not do so, the team would come into his cell to do it, using force if necessary.  *Id.*  Plaintiff refused to answer, so Peterson gave the

Page | 22 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

order to open the door and the four entered the cell. *Id.* Sanne used a shield to push Plaintiff

back toward his bunk until Plaintiff was turned away from the deputies, facing the wall, and

kneeling on the bed. *Id.* To prevent Plaintiff from kicking the deputies, Sanne placed his left

knee on Plaintiff's calves. *Id.* Plaintiff submitted to restraints and was removed from the cell for

it to be cleaned. *Id.* Plaintiff did not appear to have suffered any injury during the process and

did not complain of any injuries to the deputies. *Id.*

Several hours after, in the early morning hours of October 30, 2020, Friesen noticed

Plaintiff's door was again covered by a smock blanket. *Id.*, ¶ 30, Ex. F at 42-50. Friesen asked

him if he could remove the smock, but Plaintiff said no. *Id.* Friesen initially tried to wait

Plaintiff out, but shortly thereafter Deputy Chrisemer informed Friesen that Plaintiff was making

suicidal statements. *Id.* Friesen went to Plaintiff's door and asked if he was okay, to which

Plaintiff responded that he was going to slam his head into the toilet and hang himself with his

smock. *Id.* Friesen immediately informed Peterson and a cell extraction team was assembled

consisting of Peterson, Friesen, Chrisemer, Sanne, Gonzalez, and Deputy Corwin Burian. *Id.*

When the cell extraction team arrived at Plaintiff's cell, Peterson gave a warning to

remove the smock and submit to restraints. *Id.* When Plaintiff refused, Peterson gave the order

for the door to be opened and the deputies entered the cell. *Id.* Sanne and Chrisemer were each

able to take control of one of Plaintiff's shoulder and arms to force him to a sitting position, but

Plaintiff continued to pull himself away. *Id.* Plaintiff refused several orders to submit to

restraints, at which point Peterson asked Friesen for his Taser. *Id.* Friesen removed the cartridge

and handed the Taser to Peterson, who displayed it to Plaintiff. *Id.* Peterson placed the Taser

close to Plaintiff's chest to avoid any risk of striking one of the other deputies and warned

Plaintiff that it would be used if he did not comply. *Id.* Plaintiff immediately said that he would

comply and he was placed in handcuffs. *Id.*

Page | 23 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Because of Plaintiff's disruptive behaviors and repeated threats of suicide, he was removed from his cell and placed in a restraint chair at 12:37am. *Id.* When he was placed in the chair, Plaintiff initially indicated that his left foot was hurt in the incident. *Id.* Peterson asked Plaintiff if he required medical attention but Plaintiff declined, saying "[n]o I am good. The pain is already gone." *Id.* Jail Nurse Anthony DeOlus checked the chair restraints to confirm that they were applied correctly and examined Plaintiff for injuries. *Id.*, ¶ 31, Ex. G at 43 (Nursing Care Notes). DeOlus did not observe any injuries and Plaintiff again denied having sustained any. *Id.* Plaintiff remained in the chair from 12:37am until 5:07am that morning. *Id.*, ¶ 31, Ex. G at 77-78 (Restraint Chair Logs). During that time, Plaintiff was checked every fifteen minutes by deputies and offered fluids approximately every two hours. *Id.*

### e. January 7, 2021 Incident

On January 7, 2021, Plaintiff was due in court for sentencing in his criminal case, 20CR50283. *Id.*, ¶ 30, Ex. F at 56-69. When Plaintiff refused to leave his cell to appear in court, Marion County Circuit Court Judge David Leith ordered that Plaintiff be extracted from his cell. *Id.* In response, a cell extraction team was assembled consisting of Deputies Dean Susee, Justin Sanne, Shan Anderson, Darrin Krawez, Ben McGowan, and Kenneth Church. *Id.* Upon arrival at Plaintiff's cell, Susee advised him that they were here to take him to court and ordered him to submit to restraints. *Id.* After Plaintiff refused, Susee warned Plaintiff that pepper spray would be used against him and described its effects. *Id.* Plaintiff stated that he was still refusing and to go ahead. *Id.* Susee opened the food port of the cell but realized that Plaintiff's smock had been hung up on the inside of the cell and was blocking it. *Id.* Krawez and Sanne were able to remove the smock from the food port and deployed several short bursts of pepper spray into the cell. *Id.* Plaintiff then indicated that he would submit to restraints and allowed himself to be handcuffed through the food port. *Id.* While waiting for Plaintiff's hearing to start at the

Page | 24 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

courthouse, Krawez helped decontaminate Plaintiff using a wet towel.  *Id.*  Following the

sentencing, Plaintiff was delivered to the custody of Oregon Department of Corrections staff to

be transported to another facility.  *Id.*

### f.  Analysis

To prove a Fourteenth Amendment excessive force claim under § 1983, a pretrial

detainee must establish that "the force purposefully or knowingly used against him was

objectively unreasonable."  *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97, 135 S. Ct. 2466, 192

L. Ed. 2d 416 (2015).  "[O]bjective reasonableness turns on the facts and circumstances of each

particular case" and should be determined from the "perspective of a reasonable officer on the

scene," without the "20/20 vision of hindsight."  *Id.*  A non-exhaustive list of considerations that

may bear on the reasonableness of the force used include: (1) "the severity of the security

problem at issue"; (2) "the threat reasonably perceived by the officer"; (3) "the relationship

between the need for the use of force and the amount of force used" ; (4) "any effort made by the

officer to temper or to limit the amount of force"; (5) "whether the plaintiff was actively

resisting"; and (6) "the extent of the plaintiff's injury." *Id.* (citing *Graham v. Connor*, 490 U.S.

386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)).  In applying these factors, the court must

account for the "'legitimate interests that stem from the government's need to manage the facility

in which the individual is detained,' appropriately deferring to 'policies and practices that in

th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to

maintain institutional security.'"  *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547, 99 S. Ct.

1861, 60 L. Ed. 2d 447 (1979)).

Applying those factors, here none of the force used against Plaintiff exceeded

constitutional limitations.  In all cases, Deputies understood Plaintiff to present a significant

threat and risk to facility security, given his placement on disciplinary segregation status,

repeated threats to harm Jail staff, and otherwise erratic and disruptive behavior at the Jail.  *See*

Davis Decl. ¶¶ 31, 33, Ex. G at 79-86 (Disciplinary Sanction Log), Ex. H (Disciplinary History

Summary).  Moreover, in all instances, deputies made a significant effort to limit the amount of

force whenever possible.  During every extraction, deputies warned Plaintiff repeatedly that they

would use force if he did not submit to restraints and gave Plaintiff multiple opportunities to

submit to restraints, acting only when he continued to resist their commands.

When force ultimately had to be employed, in the case of the September 25, 2020, and

October 29 and 30, 2020, extractions, deputies used only controlled holds, which are categorized

in excessive force case law as involving only "minimal force."  *See Donovan v. Phillips*, 685

Fed. Appx. 611, 612 (9th Cir. 2017).  Although the October 5 and 6, 2020, and January 7, 2021,

extractions involved the use of intermediate levels of force in pepper spray and focused blows,

deputies only used such force when it was required after they had exhausted other opportunities

to gain Plaintiff's compliance.  Deputies were careful to limit force employed to the minimum

necessary, using pepper spray only indirectly and in measured bursts, and immediately stopped

when it was clear that the spray was affecting Plaintiff.  Additionally, Plaintiff was then given

prompt medical attention and reported at most only minor scrapes in one instance.

Following all but the October 5, 2020, incident, Defendants' use of force was reviewed

by supervisors pursuant to Jail policy, who determined in every case that the force was justified.

*Id.*, ¶ 30, Ex. E at 2 (Policy Requiring Supervisor Review), Ex. F at 13-17 (September 25), 31-33

(October 6), 38-41 (October 29), 51-55 (October 30), 70-74 (January 7).  Courts have reached

the same conclusion about similar incidents.  *See Wales v. Howell*, No. 3:18-0403, 2020 U.S.

Dist. LEXIS 96220 at *11 (M.D. Tenn. April 29, 2020) (use of pepper spray through cell door

reasonable under Eighth Amendment when plaintiff was noncompliant with verbal orders to exit

his cell); *Uerling v. Piccinini*, No. C 98-3490 CRB (PR), 1999 U.S. Dist. LEXIS 5424 at *7

(N.D. Cal. April 12, 1999), *aff'd* 238 F.3d 433 (9th Cir. 2000) (same with respect to Fourteenth

Amendment).  Accordingly, Defendants' use of force did not exceed constitutional limitations

and Defendants are entitled to summary judgment on Claim #3.

### 3.  Claims #2 and 4 – Failure to Train and Supervise

In Claims #2 and 4, Plaintiff alleges that Marion County, Joe Kast, Tad Larson, and

Jacob Ramsey violated the Fourteenth Amendment by failing to adequately train and supervise

Jail staff to ensure the delivery of adequate mental health care services and appropriate use of

force in the Jail.  Am. Compl. ¶ 7-9, 187 (ECF No. 14).  These claims are legally problematic for

several reasons.

First, municipalities, "including counties and their sheriff's departments," can only be

held liable under § 1983 as provided for in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct.

2018, 56 L. Ed. 2d 611 (1978).  *Rivera v. County of Los Angeles*, 745 F.3d 384, 389 (9th Cir.

2014) (internal quotation marks omitted).  This includes public officials in their official capacity.

*Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991).  Under *Monell*, to

establish liability, a plaintiff must prove that: (1) he was deprived of a constitutional right; (2) the

municipality had a policy; (3) the policy amounted to deliberate indifference to the plaintiff's

constitutional right; and (4) the policy was the moving force behind the constitutional violation.

*Lockett v. Cty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020).  A plaintiff can establish the

"policy" element in several ways: (1) the County had a policy, custom, or widespread practice

that was the moving force behind the violation of his constitutional rights; (2) the County failed

to properly train its officers and the failure to train amounts to deliberate indifference to

plaintiff's rights; or (3) the individual who violated plaintiff's constitutional rights had final

policy-making authority or ratified a subordinate's unconstitutional decision or action and the

basis for it.  *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 802-03 (9th Cir. 2018).  Here,

Plaintiff will be unable to provide any evidence establishing that he suffered any deprivation of his constitutional rights, let alone that such a deprivation was specifically the result of a policy, practice, custom, or failure in training.

Second, with respect to the remaining individual capacity claims, there is no basis for holding any of the named individuals liable for any alleged constitutional violations. "There is no respondeat superior liability under section 1983." *Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018). Rather, to hold a supervisor liable, Plaintiff must show "either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011). Here, Plaintiff does not allege and cannot show any evidence that the named defendants were personally involved in any claimed violation of his constitutional rights or any form of causal connection between their conduct and the violation alleged. Accordingly, Defendants are entitled to summary judgment on Claims #2 and 4.

### 4. Claim #5 – Access to Courts

Plaintiff asserts 42 U.S.C. § 1983 claims against all Defendants for violation of the First, Sixth, and Fourteenth Amendments in four different ways: (1) denying him access to legal materials to assist his attorneys in his criminal trial; (2) denying him access to his legal mail in a timely manner so that he could assist his attorneys in his criminal trial; (3) opening his legal mail outside of his presence; and (4) requiring him to conduct attorney calls and visits in his cell where there is a two-way intercom through which Jail staff and other inmates could listen in on his visits. Am Compl. ¶ 200 (ECF No. 14).

Beginning with the first contention that Plaintiff was denied access to legal material, his claim fails as a matter of law. Under the Due Process Clause of the Fifth Amendment, incarcerated individuals have a right of "meaningful access" to the courts, which includes a right

to at least some form of legal assistance during their criminal trial. *United States v. Wilson*, 690 F.2d 1267, 1271 (9th Cir. 1982).[7] However, "[t]he Supreme Court, in requiring meaningful access to the courts, has been careful to note that providing access to law libraries is but one of a number of constitutionally permissible means of achieving that objective." *Id.* (citing *Bounds v. Smith*, 430 U.S. 817, 830, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977)). "Availability of legal assistance at government expense, if required, is a constitutionally permissible means of access." *Id.* Thus, where the government appoints counsel to represent a criminal defendant at trial, it has "satisfied the Fifth Amendment obligation to provide meaningful access to the courts." *Id.* at 1272. Here, Plaintiff does not dispute that he was appointed counsel as part of his criminal trial. Accordingly, Defendants had no further obligation to provide him access to legal materials during his incarceration to assist with his criminal case.

Turning to Plaintiff's second allegation that he was denied timely access to legal mail, his complaint is not specific regarding precisely when he claims that he should have had access. However, because he only filed one grievance on November 1, 2020, on the subject, Defendants will address Plaintiff's access to legal mail as of that date. Under the First Amendment, incarcerated individuals have a right to send and receive mail. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). However, that right is not without limitation. A jail may adopt restrictions on the right to receive mail so long as they are "reasonably related to legitimate penological interests," including "goals of institutional security and safety." *Turner v. Safley*, 482 U.S. 78, 89, 93, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987).

---

[7]    Incarcerated individuals also have a right to access courts that is protected by the First Amendment, which Plaintiff also asserts. *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011). However, this right is only applicable to certain types of cases—those challenging the individual's sentence or the conditions of their confinement—and is limited only to the pleading stage of the case. *Id.* Because Plaintiff's claim involves seeking materials to assist in his original criminal trial, the First Amendment provides him no recourse.

Here, Plaintiff was restricted from possessing legal mail as part of an effort to prevent him from blocking his cell window. Davis Decl., ¶ 34. Throughout Plaintiff's incarceration, Jail staff documented at least twenty-four different incidents where he used his clothing, mattress, paper, feces, or any other material available to him to block his cell window. Davis Decl. ¶ 34, Ex. I (Disciplinary Reports). Allowing an AIC to block his cell window presents significant safety concerns for both the AIC and jail staff alike. *Id.*, ¶ 35. Being unable to see the AIC presents significant safety and security risks for Jail staff because it allows for the AIC to ambush staff entering the cell, conceal contraband, or potentially harm other AICs. *Id.* It also risks harm to the AIC as Jail staff are unable to visually monitor the AIC and ensure that they are healthy and safe. *Id.* As a result, on October 13, 2020, Plaintiff was restricted from having any form of paper in his cell, which included his legal mail. *Id.*, ¶ 34. When an AIC is placed on some form of restriction, that restriction is reviewed every three days by a supervisor to make a determination as to whether the restriction is still warranted. *Id.*, ¶ 36. Because Plaintiff continued to consistently block his cell window with anything available, supervisors continued his restrictions until November 6, 2020, when it was determined that a restriction of legal mail was no longer warranted. Davis Decl., ¶ 36, Ex. J (Ramsey Email). In a similar situation, at least one other court has determined that a restriction on an inmate's right to receive mail was permissible under the circumstances. *Jamison v. Varano*, No. 1:12-CV-1500, 2015 U.S. Dist. LEXIS 103325, 2015 WL 4662696, at *25-26 (M.D. Penn. August 6, 2015) (restriction of incoming mail warranted where, during dates in question, "[the plaintiff] routinely violated prison rules by covering the window in his cell").

Additionally of note is the fact that Plaintiff's restrictions concerned only the possession of mail in his cell—they did not outright bar him from reading or receiving mail entirely. For AICs on paper restrictions, deputies may allow them to read mail through a cell window

Page | 30 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

depending on workload.  Davis Decl., ¶ 37.  As Plaintiff himself acknowledges in Grievance No. 910, he was allowed to receive and read mail from his attorney on October 24, 2020, despite being on restrictions at that time.  *Id.*, ¶ 37, Ex. C at 1.  Further, at no point was Plaintiff ever restricted from meeting with his attorney if he wished to consult about his case.  *Id.*, ¶ 38.  Taken together, undisputed evidence reflects that the restrictions placed on Plaintiff's right to receive mail were reasonable and still permitted him alternative means of corresponding with counsel about his criminal case.

With respect to Plaintiff's third allegation, although incarcerated individuals "have a protected First Amendment interest in having properly marked legal mail opened only in their presence," *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017), Plaintiff will be unable to provide any evidence that this right was ever violated.  Under Marion County Jail Policy 3405, Jail staff are prohibited from opening an AIC's legal mail outside of the AIC's presence.  Davis Decl., ¶ 39, Ex. K at 3.  If Jail staff inadvertently open legal mail sent to an AIC, the policy requires Jail staff to complete a report of the incident under the AIC's name in the Jail's computerized reporting system, notify the shift supervisor, and provide the AIC with a copy of the report and opened mail.  *Id.*

Here, there are no records in the Jail reporting system of any of Plaintiff's mail ever having been opened, *Id.*, ¶ 40, and Plaintiff at no point ever identifies any such specific incidents. And even assuming that such an incident did occur without being properly documented, Plaintiff must show that Jail staff opening his legal mail outside of his presence was the result of more than mere negligence to prevail on a First Amendment claim under § 1983.  *Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989).  Here, there is no evidence that Jail officials ever opened Plaintiff's legal mail, let alone that they did not do so negligently, and Plaintiff will be unable to show otherwise.

Finally, Plaintiff will be unable to produce any evidence that Jail staff cell violated his right to meet with his criminal counsel privately.  Although the Sixth Amendment right to confer with counsel in private is "nearly sacrosanct," *Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014), there is absolutely no evidence here that Jail staff at any point intruded on any of Plaintiff's meetings with counsel.  Although Plaintiff alleges that he was required to meet with counsel in his cell with a two-way intercom through which Jail staff and other inmates could listen to him, no cell in the Jail is outfitted with such a device.  *Id.*, ¶ 41.  Otherwise, it is not clear how requiring Plaintiff to meet with his attorney in his cell could have violated his right to meet privately with counsel.

For the reasons stated above, Plaintiff will be unable to raise a triable question of fact regarding any of his claims.  Accordingly, Defendants are entitled to summary judgment on the merits of Plaintiff's Claim #5.

### 5.  Claim #6 – Freedom of Religion

In Claim #6, Plaintiff asserts 42 U.S.C. § 1983 claims against all Defendants for violating of his First Amendment right to free exercise of his religious beliefs by denying him access to a Bible.  Although Plaintiff's complaint does not identify any specific occasions, Defendants will again address his claims based on the dates of his pertinent grievances, November 1, 2020, November 9, 2020, and December 19, 2020.

Under the First Amendment, an incarcerated individual retains the right to freely exercise his religion.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987).  However, the right to freely exercise religion does not affirmatively require jail officials to provide copies of religious texts to inmates upon request.  *See Florer v. Peck*, No. CV-05-5039-EFS, 2007 U.S. Dist. LEXIS 118971 at *13 (E.D. Wash. July 30, 2007) (dismissing First Amendment claim that plaintiff was not provided a copy of the Torah upon request because

plaintiff was free to purchase a copy and the prison did not have "[an] affirmative obligation . . . to provide religious material").  Moreover, an inmate's right to free exercise of religion is limited by the same principals as the right to receive mail—a jail may impose restrictions "reasonably related to legitimate penological interests."  *Saud v. Days*, 36 F.4th 949, 957 (9th Cir. 2022).

Here, to the extent that Plaintiff complains that his ability to obtain a bible was restricted on November 1, 2020, November 9, 2020, and December 19, 2020, Defendants did so for the same reason as his mail—Plaintiff repeatedly created safety concerns by using any available material to block his cell window.  In the case of November 1, 2020, Plaintiff's disciplinary records reflect that he had most recently covered his cell window twice in the preceding three days.  Davis Decl., ¶ 34, Ex. I at 28-31.  On November 9, 2020, Plaintiff had covered his cell window in fecal matter one week prior and paper restrictions were lifted the very next day.  *Id.*, ¶ 34, Ex. I at 32.  Finally, on December 19, 2020, Plaintiff had blocked his window four times over the preceding two days using a shirt, toilet paper, and his own feces.  *Id.*, ¶ 34, Ex. I at 35-40.  In both cases, the restrictions Jail staff imposed were reasonable in light of Plaintiff's behavior and the need to maintain the security of the Jail facility.  Accordingly, Defendants are entitled to summary judgment on Claim #6.

### 6.  Claim #7 – ADA and Rehabilitation Act

In his final federal claim, Plaintiff alleges a violation of the Americans with Disabilities Act and the Rehabilitation Act.  To sustain such claims, plaintiff must show: (1) he is a "qualified individual with a disability;" (2) he was either excluded from participation in or denied the benefits of County services, programs, or activities, or was otherwise discriminated against by County officials; (3) because of his disability. *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004).  Plaintiff does not specify in what way he was allegedly discriminated against by County officials on the basis of any disability and will be unable to

Page | 33 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

provide any evidence showing such discrimination.  Accordingly, Defendants are entitled to summary judgment on Claim #7.

### 7. Claims #8-12 – State Constitutional Claims

In Claims #8-12, Plaintiff alleges violations of various provisions of the Oregon Constitution by all Defendants.  These claims fail as a matter of law because the Oregon Constitution does not provide a private right of action for damages.  *See Hunter v. City of Eugene*, 309 Or. 298, 304, 787 P.2d 881 (1990).  Accordingly, Defendants are entitled to summary judgment on Claims #8-12.

### 8. Claims #13-14 – State Law Negligence

Finally, in Claims #13-14, Plaintiff alleges negligence under Oregon state law on the part of all Defendants.  In Claim #13, Plaintiff asserts that Defendants' actions "constitute[ ] the state law tort of professional negligence/malpractice," before repeating the same list of particulars primarily related to inadequate medical care previously listed in Claim #1.  Am. Compl. ¶ 225 (ECF No. 14).  Although in context, the label "professional negligence/malpractice" suggests a medical malpractice claim against Jail physicians, no Jail physicians are named as a defendant in this action.  Accordingly, Defendants understand Claim #13 to instead assert a claim of ordinary negligence in the provision of medical care against other members of Jail staff, which will fail for the same reasons as Claim #1.  Plaintiff will be unable to provide any evidence demonstrating that Jail staff failed to provide him adequate medical care over the course of his incarceration.

Turning to Claim #14, Plaintiff alleges a litany of different negligence claims against Marion County, Joe Kast, Tad Larson, and Jacob Ramsey.  The complaint notes that "[t]he State of Oregon may be sued in State Court for [ ] respondeat superior claims" before alleging that the named defendants failed to properly train and supervise Jail staff in both their use of force and delivery of medical services.  Am. Compl. ¶ 226-27 (ECF No. 14).  Defendants understand this

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

claim to allege negligence in training and supervision on the parts of Kast, Larson, and Ramsey and that Marion County is also liable for their negligence by virtue of respondeat superior.  So understood, Plaintiff will be unable to substantiate this claim.  There is no evidence that any of Kast, Larson, or Ramsey ever acted unreasonably in their training and supervision of Jail staff and Plaintiff will be unable to provide evidence otherwise.  Accordingly, Defendants are entitled to summary judgment on Claims #13 and 14.

### C.  Defendants are Entitled to Qualified Immunity

Under the doctrine of qualified immunity, government officials who violate another's rights are immune from liability under § 1983 unless the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. ___, 138 S. Ct. 577, 589, 199 L. Ed. 2d 453 (2018) (*quoting Reichle v. Howards*, 566 U.S. 658, 664, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012)). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) (per curiam) (*quoting Reichle*, 566 U.S. at 664). For a constitutional right to be deemed clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) (citations omitted).  Whether or not a right is "clearly established" is a matter of law to be decided by a judge.  *Morales v. Fry*, 873 F.3d 817, 824-25 (9th Cir. 2017).  To defeat qualified immunity, the plaintiff bears the burden of showing that there is a "robust consensus of cases of persuasive authority," establishing that the right is beyond debate.  *Rico v. Ducart*, 980 F.3d 1292, 1301 (9th Cir. 2020).

Here, even if Defendants are determined to have violated Plaintiff's constitutional rights, Defendants are entitled to qualified immunity because Plaintiff will be unable to show a "robust consensus of cases of persuasive authority" establishing that County Defendants should have

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

been on notice that their actions were constitutionally deficient.  Accordingly, Defendants are also entitled to summary judgment on Claims #1-6 on this basis as well.

### V.  CONCLUSION

The Court may dismiss the vast majority of Plaintiff's claims under the PLRA for failing to exhaust his administrative remedies and under the OTCA for failing to provide a proper tort claim notice.  However, Plaintiff is also unable to meet the necessary evidentiary burden that Plaintiff bears on each claim in his lawsuit and any County Defendants who were sued in their individual capacities are entitled to qualified immunity.

For the foregoing reasons, this Court should grant Defendants' Motion for Summary Judgment and dismiss Plaintiff's lawsuit in its entirety.


Dated this 24th day of March, 2023.


Respectfully submitted,

JANE E. VETTO
MARION COUNTY LEGAL COUNSEL


_____
Keegan C. Murphy, OSB # 194264
Marion County Assistant Legal Counsel
Attorney for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing Defendants' Motion for Summary Judgment

on:

> Orlando Johnquil McCrae
> SID #18466244
> 82911 Beach Access Rd.
> Umatilla, OR  97882
> TRCI_EFiling@doc.state.or.us
> *Pro Se*

By the following indicated method or methods:

___X___   By electronic means through the Court's Case Management/Electronic Case File system on the date set forth below;

_____   By mailing a full, true, and correct copy thereof in a sealed, first-class postage-prepaid envelope, addressed to the attorney's last known office address listed above and causing it to be deposited in the U.S. mail at Salem, Oregon on the date set forth below;

_____   By electronic means to the attorney or party at each attorney's or party's last-known electronic address on the date set forth below;

_____   By causing a copy thereof to be hand-delivered to said attorney at each attorney's last-known office address listed above on the date set forth below;

DATED this 24th day of March, 2023.

Keegan C. Murphy, OSB #194264
Of Attorneys for Defendants
555 Court St. N.E., Suite 5242
P.O. Box 14500
Salem, Oregon 97309
Telephone: (503) 588-5220
Fax: (503) 373-4367
E-mail: kemurphy@co.marion.or.us