UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

ORLANDO JOHNQUIL MCCRAE,

Plaintiff,

vs.

MARION COUNTY, by and through
MARION COUNTY SHERIFF'S OFFICE,
*et al.*,

Defendants.

Case No. 6:20-cv-02272-MK

**OPINION AND ORDER**

**KASUBHAI,** United States Magistrate Judge:

Plaintiff Orlando McCrae ("Plaintiff") filed this action (ECF No. 1) alleging civil rights violations under 42 U.S.C. § 1983 and state constitutional and tort claims against Defendants Marion County, Sheriff Joe Kast, Commander Tad Larson, Lt. J. Ramsey, Sgt. Jared Miller, Deputy Allen, Deputy Anderson, Deputy Barker, Deputy Barnhill, Deputy Buckholz, Deputy

Chrisemer, Sgt. Davis, Deputy Douglass, Deputy Godoy, Deputy Gonzalez, Deputy Howell, Sgt. Jochams, Deputy Lilly, Deputy Maddy, Lt. McDaniel, Deputy McLin, Deputy Riedberger, Deputy Sanne, Deputy Sterling, Deputy Straus, Deputy A. Barton, RN Angelica, Deputy B. Hoppe, Deputy J. Friesen, Sgt. J. Peterson, Deputy J. Susee, Deputy J. Tilson, Deputy Korey Kneeland, Sgt. P. Dodson, Deputy R. Hernandez, Deputy R. Tilson, Sgt. Ryan Dunbar, Deputy S. Griffith, Deputy T. Hart, and Deputy W. Hook (collectively, "Defendants"). Defendants filed a Motion for Summary Judgment on March 24, 2023. ECF No. 53. For the reasons below, Defendants' Motion is granted.

## BACKGROUND

Plaintiff brought this action against all Defendants on December 28, 2020, alleging violations of his First, Fourth, Sixth, Eighth, and Fourteenth Amendment rights, as well as violations of Oregon state and constitutional law. Plaintiff's claims arise out of a series of incidents that took place while Plaintiffs was in Defendants' custody as a pretrial detainee at the Marion County Jail (the "Jail"). Compl., ECF No. 2. Plaintiff was held in pretrial custody at the Jail from September 13, 2020, through January 7, 2021. *Id.* Plaintiff suffers from a mental health disability and has a seventh-grade education. *Id.*

The alleged violations of Plaintiffs' constitutional and statutory rights began on September 25, 2020, when Plaintiff was allegedly "stripped naked and left in an empty, unbearably cold cell with no shelter and no bedding." *Id.* at ¶ 25. Then on October 6, 2020, Plaintiff was pepper-sprayed by Jail staff. Am. Compl. ¶¶ 102, 126, 185(h), 193, ECF No. 14. Plaintiff also alleges that, during his pretrial custody, Jail staff violated his 14th amendment rights by (1) failing to provide him with adequate and timely psychiatric care; (2) failing to properly decontaminate him after he had been pepper sprayed or had covered himself in fecal

matter; and (3) denying him basic necessities including clothing, bedding, soap, towels, and other items. Am Compl. ¶ 185. Plaintiff's Amended Complaint, filed on August 19, 2021, alleges that Defendants also denied him access to courts and interfered with his right to freedom of religion; discriminated against him in violation of the Americans with Disabilities Act; and used excessive force against him on five different occasions: September 25, October 5 and 6, October 29 and 30, 2022, and on January 7, 2021. *Id.*

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630.

**DISCUSSION**

Defendants argue that Plaintiff's claims must fail because (1) Plaintiff failed to exhaust his administrative remedies; (2) Defendants are entitled to qualified immunity; (3) Plaintiff failed to satisfy the notice requirements of Oregon Tort Claims Act; and (4) Plaintiff cannot show any constitutional violation. For the reasons discussed below, Defendants' motion is granted.

**I.      Exhaustion of Administrative Remedies**

Defendants first argue that they are entitled to summary judgment on Plaintiff's claims because Plaintiff failed to exhaust his administrative remedies prior to filing this action as required by the Prison Litigation Reform Act (PLRA). Specifically, Defendants argue that Plaintiff failed to properly grieve the incidents that form the bases of his constitutional complaints. To support this argument, Defendants cite deposition testimony from Jail staff to show that Plaintiff did not complete the grievance and appeal procedure for each incident of alleged excessive force, deliberate indifference, cruel and unusual punishment, or failure to train and supervise. In his response, Plaintiff argues that his failure to grieve these incidents is excused because (1) his mental illness prevented him from properly understanding the grievance procedures, (2) Defendants retaliated against him for filing grievances, and (3) Defendants otherwise prevented Plaintiff from appealing the Jail's responses to Plaintiff's grievances. Plaintiff's Brief in Opp., ECF No. 82.

Under the Prison Litigation Reform Act (PLRA), adults in custody (AICs) must exhaust all available administrative remedies before filing a federal action to redress prison conditions or incidents. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available

are exhausted."). The exhaustion requirement is mandatory and requires compliance with both procedural and substantive elements of the prison administrative process. *Woodford v. Ngo,* 548 U.S. 81, 85, 90 (2006). AICs must exhaust all available grievance remedies before filing a § 1983 action, including appealing grievance decisions to the highest level. *Jackson v. Fong*, 870 F.3d 928, 933 (9th Cir. 2017).

If the defendant shows that the AIC did not exhaust an available administrative remedy, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014); *see also Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) ("[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'") (citation omitted). This burden is met when the AIC shows that he or she took "reasonable and appropriate steps" to pursue administrative remedies, but prison officials nonetheless interfered with attempts to exhaust or failed to follow correct grievance protocol. *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010).

Defendants contest Plaintiff's exhaustion of administrative remedies with respect to his claims of (1) inadequate mental health treatment; (2) lack of access to courts; (3) freedom of religion; (4) ADA and Rehabilitation Act violations; and (5) conditions of confinement and excessive force.

**1. Mental Health Grievance**

Plaintiff submitted a grievance regarding his allegation that the Jail was providing inadequate mental health treatment (Grievance No. 2389). Plaintiff pursued this grievance up

through the second level of review and, on the grievance form, signed his name to indicate that he accepted the Jail's resolution. Davis Decl. I ¶ 26, Ex. C at 31-32, ECF No. 54.

### 2. Access to Courts

Regarding Plaintiff's claim that he was denied access to courts, Defendants concede the Plaintiff fully grieved his complaint that Jail staff were reading his legal mail and listening in on his conversations with his attorney. Defendants argue, however, that because Plaintiff's grievance of this issue (Grievance No. 2193) "contains only generalized allegations and does not allege any specific dates on which either claimed violation occurred, Plaintiff's grievance failed to give Defendants 'fair notice' of his claims as required by the PLRA." ECF No. 53 at 19. The Court disagrees. Because Plaintiff's grievance form sufficiently alleges a denial of access to courts, the Court finds that Plaintiff has satisfied the PLRA requirements for administrative exhaustion regarding this claim.

### 3. Freedom of Religion

Plaintiff also filed and appealed a grievance regarding his freedom of religion claim, Grievance No. 914. Defendants argue that this grievance was deficient because Plaintiff did not "specifically identify what materials Plaintiff was claiming that he had been denied access to." Def. Mtn. Summ. J. at 20, ECF No. 53. In his response, Plaintiff alleges that he was denied access to a Bible. The Court finds that Plaintiff grieved his freedom of religion claim for the purposes of satisfying the PLRA.

### 4. ADA and Rehabilitation Act

With respect to Plaintiff's claims under the ADA and Rehabilitation Act, Defendants argue that Plaintiff failed to file any grievances regarding these claims while he was incarcerated. Defendants argue that these claims are also barred by the PLRA. The Court agrees.

### 5. Conditions of Confinement and Excessive Force

Plaintiff also grieved his claim regarding the Jail's failure to properly decontamination him (Grievance No. 961) following an incident on October 6, 2020, when Jail staff pepper-sprayed Plaintiff. Am. Compl. ¶¶ 102, 126,185(h), 193. Plaintiff did not seek review of the Jail's response but filed a separate grievance (Grievance No. 2189) regarding the same incident on November 24, 2020. Davis Decl. I ¶ 23. Two days after filing that grievance, on November 26, Plaintiff submitted Grievance No. 2200, alleging that on September 25, 2020, he was "stripped naked and left in an empty, unbearably cold cell with no shelter and no bedding." *Id.* at ¶ 25. A deputy responded to Plaintiff's grievance stating that it was void because it was beyond the thirty-day window for grievances under Jail rules, and Plaintiff did not seek further review. *Id.*

With respect to Plaintiff's excessive force claims and claims regarding his conditions of confinement, Defendants note that jail rules prohibit grieving disciplinary issues and that appeals from disciplinary sanctions are handled via a separate process. Here, several of Plaintiff's claims arise out of disciplinary sanctions such as removal of materials from Plaintiff's cell and the use of pepper-spray and forced cell extractions. Defendants argue that summary judgment is appropriate on Plaintiff's excessive force and conditions of confinement claims. In response, Plaintiff argues that he was threatened with retaliation for filing grievances and that some of the Jail's responses to his grievances were withheld from him, resulting in his inability to properly appeal. Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has met his burden to show that he took "reasonable and appropriate steps" to pursue administrative remedies, but prison officials nonetheless interfered with attempts to exhaust his administrative remedies with respect to his excessive force and conditions of confinement claims. *Nunez*, 591 F.3d at 1224.

In sum, the Court agrees with Defendants that Plaintiff failed to properly grieve his allegation that the Jail provided inadequate mental health treatment as well as Plaintiff's claims under the ADA and Rehabilitation Act. Because Plaintiff failed to satisfy the PLRA requirements, Defendants' motion for summary judgment is granted with respect to these claims. Because the Court finds that Plaintiff either adequately grieved or provided evidence that he took reasonable and appropriate steps to grieve his remaining claims, the Court proceeds to a qualified immunity analysis of those claims.

## II.     Qualified Immunity

Defendants argue Plaintiff has not shown a violation of a constitutional right on any of his claims and, even if he could, Defendants would nevertheless be entitled to qualified immunity. To determine whether a defendant is entitled to qualified immunity, the Court considers two questions: (1) whether the defendant violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). As the Ninth Circuit recently explained in *Isayeva v. Sacramento Sheriff's Department*, 872 F.3d 938, 945 (9th Cir. 2017), an officer may be denied qualified immunity at summary judgment in a Section 1983 case "only if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood [his] conduct to be unlawful in that situation." *Id*. at 945 (internal quotations omitted). The Court finds that Defendants are entitled to qualified immunity on each of Plaintiff's federal constitutional claims because Plaintiff has failed to show a violation of a clearly established constitutional right.

### 1. Failure to Train and Supervise

Plaintiff's Amended Complaint alleges that the Jail failed to properly train and supervise its deputies and other staff. Liability under § 1983 arises only upon a showing of personal participation by each defendant, and a supervisor – such as the jail commander or sheriff – is not liable for the constitutional violations of employees unless the supervisor "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A claimant must show that each named defendant, through his or her own individual actions, violated the claimant's constitutional rights. *See id.* at 1045. In his briefing, Plaintiff offers no evidence that would establish any element of a claim for failure to train and supervise. *See* Pl.'s Opp. Accordingly, Defendants are entitled to qualified immunity on Plaintiff's failure to train and supervise claims.

**2. Excessive Force Claims**

Plaintiff also alleges constitutional violations based on excessive use of force. To prove a Fourteenth Amendment excessive force claim under § 1983, a pretrial detainee must establish that "the force purposefully or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97, 135 S. Ct. 2466, 192 L. Ed. 2d 416 (2015). "[O]bjective reasonableness turns on the facts and circumstances of each particular case" and should be determined from the "perspective of a reasonable officer on the scene," without the "20/20 vision of hindsight." *Id*. A non-exhaustive list of considerations that may bear on the reasonableness of the force used include: (1) "the severity of the security problem at issue"; (2) "the threat reasonably perceived by the officer"; (3) "the relationship between the need for the use of force and the amount of force used"; (4) "any effort made by the officer to temper or to limit the amount of force"; (5) "whether the plaintiff was actively resisting"; and (6) "the extent of the plaintiff's injury." *Id*. (citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104

L. Ed. 2d 443 (1989)). In applying these factors, the court must account for the "'legitimate interests that stem from the government's need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id*. (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)).

Regarding the October 5, 2020, incident alleged in the complaint, Plaintiff argues that Jail deputies used excessive force when they punched him through the food port of his cell to prevent him from blocking it. Defendants allege that Jail deputies needed to clear the food port so that they could use pepper spray to stop Plaintiff from breaking the head off of a fire suppression sprinkler. Def. Reply at 19-20, ECF No. 85. Plaintiff admits that, at the time of the incident, he was standing on a sink attempting to break the sprinkler head and threatening to flood his cell. Plaintiff also admits that, once deputies interceded, he jumped down from the sink and attempted to block his cell's food port to prevent deputies from subduing him. Def. Reply at 19. Plaintiff maintains that the use of the physical force to remove him from the food port was nevertheless excessive because, after jumping down from the sink, he had "giv[en] up his attempt to break the sprinkler" and no longer posed a risk to Jail staff or property. Def. Reply at 20.

Applying the relevant *Kingsley* factors, the Court finds that Defendants' use of force in this instance was not a violation of a clearly established constitutional right. 576 U.S. at 396-97. With respect to the fifth consideration, Plaintiff was actively resisting. Defendants have also provided evidence that the extent of any injury to Plaintiff's was minimal. Defendants have provided testimony from Jail staff that they were attempting to prevent Plaintiff from breaking the sprinkler head and flooding his cell by moving Plaintiff to another cell where the sprinkler was out of reach. Jail staff could not do so without first using pepper spray, given Plaintiff's

threats toward anyone who came into the cell and his history of violent behavior in the Jail. *Id.*, Ex. F at 18, Ex. H (disciplinary history summary). The security problem at issue was therefore of moderate severity, and a threat of violence was reasonably perceived by the Jail staff based on Plaintiff history and present threats. *See Kingsley*, 576 U.S. at 396-97. Because the only means of delivering the pepper spray into the cell was via the food port, Jail deputies determined that it was necessary to use punches to clear the port. Davis Decl. I, Ex. F at 18; Murphy Decl., Ex. A at No. 18 (interrogatory response of Deputy Randy Barnhill, Jr.), ECF No. 87. Deputy Hoppe delivered two blows to Plaintiff's buttocks through the food port. Davis Decl. I, Ex. F at 18. Although Plaintiff was still able to block the port using his mattress, after deputies warned Plaintiff that they would use pepper spray, Plaintiff submitted to restraints. *Id*. Plaintiff was then seen by medical staff and did not complain of any injury. *Id*.

Regarding the remaining incidents occurring on October 6th, 29th, and 30th, Plaintiff argues that it was excessive for Jail staff to employ pepper spray against him because he is asthmatic. However, Plaintiff provides no evidence that he has ever been diagnosed with asthma. On the contrary, during the Jail intake process Plaintiff was asked whether he had any current medical conditions and indicated that he had none.[1] Davis Decl. II, Ex. E (intake report), ECF No. 86. Because Plaintiff has failed to provide evidence that Defendants' use of force on these occasions was unreasonable, and Defendants are entitled to qualified immunity on these claims. *See Kingsley*, 576 U.S. at 396-97.

Plaintiff also alleges that Defendants used excessive force against him while extracting him from his cell in anticipation of his January 7, 2021, sentencing hearing. Pl.'s Opp. at 24-25.

---

[1] In his briefing, Plaintiff is equivocal regarding whether he has asthma. Pl. Opp. at 23 ("The dispute is also[ ] whether or not the [D]efendants pepper sprayed the [P]laintiff – ignoring the fact that he was asthmatic (or could be)").

Page 11 — OPINION AND ORDER

During the cell extraction, Plaintiff was pepper sprayed and placed into a restraint chair so that he could be transported to the courthouse for sentencing. Davis Decl. I, Ex. F at 56-74. Plaintiff claims that he was subjected to excruciating pain on this occasion because his restraints were too tight, and that he was not provided proper decontamination to relieve him from the effects of the pepper spray. Pl.'s Opp. at 24. However, Plaintiff did not raise either issue during his sentencing hearing, despite repeatedly interrupting proceedings to make other complaints regarding his current condition. *See* Pl. Decl., Ex. N, 78-88 (sentencing transcript), ECF No. 83. While Plaintiff later raised these issues with Jail staff, there is evidence in the record that deputies checked Plaintiff's restraints and loosened them after confirming that they were tight, which Plaintiff appreciated. Davis Decl. I, Ex. F at 57. Beyond the allegations in his Amended Complaint, Plaintiff has not provided any evidence that Defendants were aware that he had been restrained too tightly and ignored the risk that Plaintiff would be harmed. Further, Defendants have provided evidence that, immediately after Plaintiff was pepper sprayed, Jail staff applied wet towels to his face to decontaminate him, Davis Decl. I, Ex. F at 58, and continued to apply them to Plaintiff's face and body as needed over the course of his sentencing hearing. *Id*. at 61, 64. Plaintiff has failed to provide evidence that Defendants violated a clearly established constitutional right on the January 7 incident.

### 3. Conditions of Confinement

Plaintiff also alleges a Fourteenth Amendment violation based on three forms of unconstitutional conditions of confinement: (1) failing to provide him adequate and timely care for various psychiatric conditions; (2) failing to promptly decontaminate him after he had been pepper sprayed or covered himself in fecal matter; and (3) denying him several basic necessities,

including clothing, bedding, soap, towels, and other unspecified hygiene items. Am. Compl. ¶ 185.

Plaintiff first alleges that he was "offered NO treatment" for his mental health issues "throughout his entire incarceration." Pl.'s Opp. at 6, ECF No. 82. As discussed above, Plaintiff failed to properly grieve his allegation that the Jail provided inadequate mental health treatment. Further, Defendants have provided records showing that Plaintiff received psychiatric treatment, including medication and visits with behavioral health professionals. Defs' Mot. at 17-18; Davis Decl. I, Ex. G. Plaintiff has also provided records showing that he received a psychiatric evaluation while in pretrial custody. Pl. Decl, Ex. G., ECF No. 83. Thus, even if Plaintiff could satisfy the PLRA requirements, Defendants would be entitled to qualified immunity on this claim because there is no evidence in the record that Defendants violated any clearly established constitutional right. *See Pearson*, 555 U.S. 232.

Plaintiff alleges in his Response that Defendants failed to provide him proper decontamination on 17 different occasions. Pl.'s Opp. at 11. Plaintiff's Amended Complaint, however, only alleges two such incidents, occurring on October 6, 2020 and October 22, 2020. Am. Compl. ¶¶ 102, 126, 185(h), 193 (October 6th incident) ECF No. 14; *Id.* ¶¶ 75-76, 85, 87, 114, 185(h), 193 (October 22nd incident). Regarding the October 6th incident, undisputed records from Jail deputies and nursing staff involved unanimously agree that Plaintiff was provided both wet towels and water to decontaminate with after he was pepper sprayed. Davis Decl. I ¶ 30, Ex. F at 21 (Barton), 23 (Gonzalez), 25-26 (Griffith), 28 (Hoppe), 29 (McDaniel). Plaintiff made no complaints when seen an hour after the incident, refused a shower on October 7th, and did not raise any issues during a medical appointment on October 8th. *Id.* ¶ 31, Ex. G at 45. With respect to the October 22nd incident, Defendants have also provided evidence that

Plaintiff refused a shower the same day and never alerted staff to any concerns with cell hygiene. *Id.* ¶ 31, Ex. G at 45, 79. On this record, Defendants are entitled to qualified immunity on Plaintiff's decontamination claims.

Plaintiff's final allegation in his first claim for relief is that he was denied a variety of items required for his basic needs, including clothing, bedding, personal hygiene supplies like soap and toothpaste, as well as other named items. In his response, Plaintiff alleges that he was denied these items for "nearly 90" of the 117 days of his incarceration. Pl.'s Opp. at 16. Plaintiff argues that this deprivation was excessive because only two Jail reports documented Plaintiff misusing hygiene products. *Id.*

The Ninth Circuit has recognized that some restrictive conditions of confinement are constitutional when they "serve a legitimate penological interest." *Chappell v. Mandeville*, 706 F.3d 1052, 1062 (9th Cir. 2013). Here, Defendants provide evidence that Plaintiff misused hygiene on several occasions. Davis Decl. I, Ex. B at 2 (using toothbrush in attempt to break sprinkler head), 6 (blocking cell window with toothpaste), 8 (wrapping feces in towel given to deputy). Further, although Plaintiff was prohibited at various times from possessing certain hygiene items such as soap, towels, and toothpaste while in his cell, he was provided soap and towels each time that he showered and allowed to use a toothbrush and toothpaste whenever he requested to brush his teeth and was provided with many of the items that he alleges were withheld, including fresh clothing and linens. Davis Decl. I, ¶ 31, Ex. G at 79-86; Davis Decl. II, ¶ 11. On this record, Defendants are entitled to qualified immunity on Plaintiff's remaining Fourteenth Amendment claims.

### 4. Access to Courts

Plaintiff also alleges violations of his First, Sixth, and Fourteenth Amendment rights based on Defendants' alleged denials of access to legal materials and legal mail, and alleged interference with his ability to privately speak with his criminal defense attorney. To sustain a denial of access to courts claim, a plaintiff must present evidence giving rise to a reasonable inference that he suffered an actual injury to contemplated or existing litigation. *Lewis v. Casey,* 518 U.S. 343, 351-53 (1996); *Nevada Dep't of Corr. v. Greene,* 648 F.3d 1014, 1018 (9th Cir. 2011). "Actual injury [means] actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Hathaway v. Cote,* 622 F. App'x 701, 702 (9th Cir. 2015) (internal quotations omitted). "[T]he underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant," and "be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Christopher v. Harbury,* 536 U.S. 403, 416 (2002); *see also Rogers v. Giurbino,* 625 F. App'x 779, 782 (9th Cir. 2015) (affirming dismissal of access to the courts claim because the plaintiff failed to include facts about the underlying "lost" cause of action).

Here, while Plaintiff has provided evidence that there were some delays in his ability to see his criminal defense attorney, Plaintiff has not provided any evidence that Defendants' alleged interference caused an actual injury to contemplated or existing litigation. *See Lewis*, 518 U.S. at 351-53; *Hathaway,* 622 F. App'x at 702. With respect to Plaintiff's allegations that Defendants restricted his access to legal materials to assist in his criminal defense, Plaintiff provides no evidence or legal argument to show how this alleged restriction violated any right secured by the U.S. Constitution. Similarly, Plaintiff provides no evidence of actual injury

resulting from his allegation that Defendants listened in on his conversations with his attorney. Defendants are therefore entitled to summary judgment on Plaintiff's access to courts claims.

### 5. Freedom of Religion

Plaintiff also alleges that he was denied access to a Bible on various occasions during his incarceration. To sustain his First Amendment freedom of religion claim, Plaintiff must show that Defendants burdened the free exercise of his religion without any justification reasonably related to a legitimate penological interest. *See Shakur v. Schiro*, 514 F.3d 878, 884 (9th Cir. 2008). To constitute an impermissible burden, the government's conduct must do more than "inconvenience" a religious exercise; it "must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jones v. Williams*, 791 F.3d 1023, 1031-32 (9th Cir. 2015) (citations omitted).

Here, Defendants provided evidence that Plaintiff previously misused multiple items to block access to his cell. Davis Decl. I ¶ 34-35. While Plaintiff argues that Defendants provided no evidence that Plaintiff specifically misused paper in his cell, the Court finds that Defendants' occasional deprivation of Plaintiff's access to a Bible was reasonably related to the legitimate penological interest of maintaining safety and did not impermissibly burden Plaintiff's free exercise of religion. *Shakur*, 514 F.3d at 884; *see also Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989) (adopting a reasonableness standard for reviewing the Constitutionality of prison regulations).

### 6. ADA and Rehabilitation Act claims

Plaintiff's seventh claim for relief alleges that he was discriminated against on the basis of his mental health conditions, in violation of the Americans with Disabilities Act and the

Rehabilitation Act. As discussed above, Plaintiff failed to properly grieve his ADA and Rehabilitation Act claim. The Court notes that even if these claims could survive the PLRA requirements, Plaintiff fails to provide evidence that would surmount Defendants' claim to qualified immunity. To sustain a claim under the ADA, a claimant must show: (1) he is a "qualified individual with a disability;" (2) he was either excluded from participation in or denied the benefits of prison services, programs, or activities, or was otherwise discriminated against by prison officials; (3) because of his disability. *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004). Here, while Plaintiff has provided evidence that he is a qualified individual with a mental health disability, he presents no evidence that he was denied prison services or discriminated against because of his disability.

For the reasons discussed above, Defendants are entitled to summary judgment on all of Plaintiff's federal claims.

### III.  State Constitutional and Negligence Claims

In addition to his federal claims, Plaintiff's Amended Complaint asserts seven claims, including violations of the Oregon state constitution and claims of negligence under Oregon state law.[2] Defendants argue that they are entitled to summary judgment on these claims because Plaintiff failed to satisfy the Oregon Tort Claims Act (OTCA) notice requirements prior to filing this action. Specifically, Defendants allege that they did not receive formal notice of Plaintiff's claims within 180 days of the events described in the Complaint. Further, although Plaintiff commenced this action within 180 days of his alleged injuries, "none of the claims asserted in [Plaintiff's] original complaint are the same as the ones asserted in his amended complaint,

---

[2] Claims 8-12 assert state constitutional claims under the Oregon constitution and claims 13 and 14 assert state law negligence claims. Am. Compl. at 45-57.

which was not filed until … August 19, 2021." Def. Mtn. Summ. J. at 23; *see also* Compl. at 4-17.

Except in the case of wrongful death actions, the OTCA notice requirements provide that notice must be given within 180 days of the alleged loss or injury. O.R.S. § 30.275(2). Timely notice "is a substantive precedent to recovery under the Oregon Tort Claims Act that, if not satisfied, deprives a plaintiff of the right to make a claim." *Orr v. City of Eugene*, 151 Or. App. 541, 543 (1997) (internal quotation marks omitted). Plaintiff's brief in opposition to Defendants' motion provides no reply to Defendants' argument that he failed to satisfy the OTCA requirements. Because Plaintiff's Amended Complaint was filed outside the 180-day window provided by the OTCA to provide "actual notice" to a party, O.R.S. § 30.275(6), and Plaintiff provides no evidence that he satisfied the OTCA notice requirements by any other means, the Court finds that Plaintiff's state claims are barred by the OTCA. Defendants are entitled to summary judgment on Plaintiff's state claims.

## CONCLUSION

For the reasons above, Defendants' motion for summary judgment (ECF No. 53) is GRANTED.

IT IS SO ORDERED.

DATED this 28th day of November 2023.

s/ Mustafa T. Kasubhai  
MUSTAFA T. KASUBHAI (He / Him)  
United States Magistrate Judge